# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| MIRROR WORLDS, LLC<br><br>    Plaintiff,<br><br>v.<br><br>APPLE INC.<br><br>    Defendant. | Civil Action No. 6:08-CV-88 LED |
| APPLE INC.<br><br>    Counterclaim Plaintiff<br><br>v.<br><br>MIRROR WORLDS, LLC,<br>MIRROR WORLDS TECHNOLOGIES, INC.,<br><br>    Counterclaim Defendants. | JURY TRIAL DEMANDED |

## JOINT PROPOSED JURY INSTRUCTIONS

Pursuant to the Court's Docket Control Order, the parties hereby submit their Joint

Proposed Jury Instructions.

Respectfully submitted,

Dated: August 20, 2010

/s/ Alexander Solo

Joseph Diamante
Kenneth Stein
Ian G. DiBernardo
Alexander Solo
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York NY 10038
Telephone: 212-806-5400

Dated: August 20, 2010

/s/ Jeffrey G. Randall

Jeffrey G. Randall
Lead Attorney
PAUL, HASTINGS, JANOFSKY, AND
WALKER LLP
1117 S. California Avenue
Palo Alto, California 94304-1106
Telephone: (650) 320-1850
Facsimile: (650) 320-1950

Facsimile: 212-806-6006
asolo@stroock.com

Otis Carroll, Lead Counsel
(Texas States Bar No. 03895700)
Deborah Race
(Texas State Bar No. 16448700)
IRELAND CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
Email: Fedserv@icklaw.com

Attorneys for:
MIRROR WORLDS, LLC and
MIRROR WORLDS TECHNOLOGIES,
INC.

jeffrandall@paulhastings.com

Allan M. Soobert
PAUL, HASTINGS, JANOFSKY, AND
WALKER LLP
875 15th Street, N.W.
Washington, DC 20005
Telephone: (202) 551-1822
Facsimile: (202) 551-0222
allansoobert@paulhastings.com

S. Christian Platt
PAUL, HASTINGS, JANOFSKY, AND
WALKER LLP
4747 Executive Dr., 12th Floor
San Diego, CA 92121
Telephone: (858) 458-3034
Facsimile: (858) 458-3005
christianplatt@paulhastings.com

Eric M. Albritton
Texas State Bar No. 00790215
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
Telephone: (903) 757-8449
Facsimile: (903) 758-7397
ema@emafirm.com

Attorneys for:
APPLE INC.

# TABLE OF CONTENTS

**Page**

1.   PRELIMINARY INSTRUCTIONS ....................................................................1

   1.1    WHAT A PATENT IS AND HOW ONE IS OBTAINED .....................................1

   1.2    THE PATENTS INVOLVED IN THIS CASE ......................................................4

   1.3    THE POSITIONS OF THE PARTIES .................................................................5

   1.4    BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE ..................7

   1.5    BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE ..................8

   1.6    NOTETAKING – PERMITTED (PLAINTIFF'S PROPOSED INSTRUCTION).9

   1.7    EVIDENCE IN THE CASE (PLAINTIFF'S PROPOSED INSTRUCTION)......10

   1.8    WHAT IS NOT EVIDENCE (PLAINTIFF'S PROPOSED INSTRUCTION) ....12

   1.9    TRIAL PROCEDURE .......................................................................................13

   1.10   GLOSSARY OF PATENT AND TECHNICAL TERMS ..................................16

2.   FINAL INSTRUCTIONS .................................................................................18

   2.1    GENERAL INSTRUCTIONS AT CLOSE OF TRIAL (PLAINTIFF'S
        PROPOSED INSTRUCTION) ..........................................................................18

   2.2    INSTRUCTIONS APPLY TO EACH PARTY; ALL PERSONS EQUAL
        BEFORE THE LAW – ORGANIZATIONS (PLAINTIFF'S PROPOSED
        INSTRUCTION) .................................................................................................19

   2.3    EVIDENCE IN THE CASE (PLAINTIFF'S PROPOSED INSTRUCTION)......20

   2.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE (PLAINTIFF'S PROPOSED
        INSTRUCTION) .................................................................................................22

   2.5    "INFERENCES" DEFINED (PLAINTIFF'S PROPOSED INSTRUCTION) .....23

2.6     CREDIBILITY OF WITNESSES; DISCREPANCIES IN TESTIMONY

        (PLAINTIFF'S PROPOSED INSTRUCTION) ....................................................24

2.7     IMPEACHMENT INCONSISTENT STATEMENT OR CONDUCT

        (PLAINTIFF'S PROPOSED INSTRUCTION) ....................................................26

2.8     EFFECT OF PRIOR INCONSISTENT STATEMENTS OR CONDUCT

        (PLAINTIFF'S PROPOSED INSTRUCTION) ....................................................27

2.9     EXPERT WITNESSES (PLAINTIFF'S PROPOSED INSTRUCTION) .............28

2.10    CHARTS AND SUMMARIES (PLAINTIFF'S PROPOSED INSTRUCTION).29

2.11    CONTENTIONS OF THE PARTIES ..................................................................30

2.12    AGREEMENTS ON BEHALF OF CORPORATIONS (DEFENDANT'S

        PROPOSED INSTRUCTION) .............................................................................33

3.    THE MEANING OF CLAIM TERMS (DEFENDANT'S PROPOSED INSTRUCTION)35

4.    INFRINGEMENT...........................................................................................................40

4.1     DIRECT INFRINGEMENT—GENERALLY ......................................................40

4.2     DIRECT INFRINGEMENT—LITERAL INFRINGEMENT .............................41

4.3     THE MEANING OF CLAIM TERMS(PLAINTIFF'S PROPOSED

        INSTRUCTION)...................................................................................................42

4.4     OPEN-ENDED OR "COMPRISING" CLAIMS ..................................................47

4.5     INFRINGEMENT OF DEPENDENT CLAIMS...................................................48

4.6     DIRECT INFRINGEMENT—DOCTRINE OF EQUIVALENTS ......................49

4.7     DIRECT INFRINGEMENT—MEANS-PLUS-FUNCTION CLAIMS ..............51

4.8     INDIRECT INFRINGEMENT (PLAINTIFF'S PROPOSED INSTRUCTION)..55

4.9      INDUCING PATENT INFRINGEMENT (PLAINTIFF'S PROPOSED

         INSTRUCTION)....................................................................................56

4.10     CONTRIBUTORY INFRINGEMENT (PLAINTIFF'S PROPOSED

         INSTRUCTION)....................................................................................59

4.11     INFRINGEMENT BY SUPPLY OF ALL OR A SUBSTANTIAL PORTION OF

         THE COMPONENTS OF A PATENTED INVENTION TO ANOTHER

         COUNTRY 271(F)(1) (PLAINTIFF'S PROPOSED INSTRUCTION) ...............61

5.       WILLFUL INFRINGEMENT ............................................................................63

5.1      WILLFUL INFRINGEMENT ...............................................................63

6.       INVALIDITY ....................................................................................................66

6.1      INVALIDITY-GENERALLY ................................................................66

6.2      INVALIDITY - PATENT CLAIMS TO BE CONSIDERED SEPARATELY

         (PLAINTIFF'S PROPOSED INSTRUCTION) .....................................69

6.3      ANTICIPATION—PUBLICLY USED OR KNOWN, OR PREVIOUSLY

         PUBLISHED.........................................................................................72

6.4      ANTICIPATION—STATUTORY BARS ............................................76

6.5      OBVIOUSNESS ....................................................................................79

6.6      THE SCOPE AND CONTENT OF PRIOR ART .................................83

6.7      DIFFERENCES OVER THE PRIOR ART...........................................84

6.8      LEVEL OF ORDINARY SKILL ..........................................................85

6.9      IMPROPER INVENTORSHIP (DEFENDANT'S PROPOSED INSTRUCTION)86

6.10     WRITTEN DESCRIPTION (DEFENDANT'S PROPOSED INSTRUCTION)..88

6.11     ENABLEMENT (DEFENDANT'S PROPOSED INSTRUCTION)....................89

7.      EQUITABLE DEFENSES .............................................................91

   7.1      INEQUITABLE CONDUCT (DEFENDANT'S PROPOSED INSTRUCTION), 91

   7.2      LACHES (PLAINTIFF'S PROPOSED INSTRUCTION)...................................95

   7.3      EQUITABLE ESTOPPEL (PLAINTIFF'S PROPOSED INSTRUCTION) ........98

   7.4      WAIVER (PLAINTIFF'S PROPOSED INSTRUCTION) ................................100

8.      DAMAGES...................................................................................101

   8.1      DAMAGES—GENERALLY..............................................................101

   8.2      DAMAGES—BURDEN OF PROOF ..................................................102

   8.3      DAMAGES—WHEN DAMAGES BEGIN........................................103

   8.4      REASONABLE ROYALTY (PLAINTIFF'S PROPOSED INSTRUCTION)...105

   8.5      REASONABLE ROYALTY—DEFINITION ....................................106

   8.6      REASONABLE ROYALTY – DOUBTS RESOLVED AGAINST INFRINGER

            (PLAINTIFF'S PROPOSED INSTRUCTION) ...................................108

   8.7      NON-INFRINGING ALTERNATIVES (DEFENDANT'S PROPOSED

            INSTRUCTION)...............................................................................109

   8.8      FORM OF ROYALTY (DEFENDANT'S PROPOSED INSTRUCTION) .......110

   8.9      DAMAGES MAY NOT BE PUNITIVE OR SPECULATIVE (DEFENDANT'S

            PROPOSED INSTRUCTION) .........................................................111

   8.10     INSTRUCTIONS FOR DELIBERATIONS ........................................112

1.      **PRELIMINARY INSTRUCTIONS**

1.1      **WHAT A PATENT IS AND HOW ONE IS OBTAINED**

This case involves disputes over United States patents.  Before summarizing the positions of the parties and the legal issues involved in the disputes, I want to explain what a patent is and how one is obtained.

The United States Constitution grants Congress the powers to enact laws "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."  Using this power, Congress enacted the patent laws.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  A valid United States patent gives the patent holder certain rights for up to 20 years from the date the patent application was filed.  The patent holder may prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States without the patent holder's permission.  A violation of the patent holder's rights is called infringement.  The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution.  To obtain a patent, one must file an application with the PTO.  The PTO is an agency of the federal government and employs trained examiners who review applications for patents.  The application includes a section called the "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, and how to make and use it, in such full, clear, concise, and exact terms so that others skilled in the field will know how to make and use it.  The specification concludes with one or more numbered sentences.  These are the patent

"claims." If the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries. Claims can be independent or dependent. An independent claim is self-contained. A dependent claim refers back to an earlier claim and includes the requirements of the earlier claim.

After the applicant files a patent application, a PTO patent examiner reviews it to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner may review "prior art." Prior art is defined by law, and, at a later time, I will give you specific instructions on what constitutes prior art. In general, though, prior art includes things that existed before the claimed invention, that were publicly known or used in this country, or that were patented or described in a publication in any country. The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious when compared with the prior art. A patent lists the prior art the examiner considered; this list is called the "cited references." The cited references include the prior art found by the examiner as well as any prior art submitted to the PTO by the applicant.

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed." This writing from the patent examiner is called an "office action." If the examiner rejects any of the claims, the applicant then responds and sometimes changes the claims or submits new claims. This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner believes that the application and claims meet the requirements for a patent. The papers generated during this time of communicating back and forth between the patent examiner and the

applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the PTO grants the patent.

Just because the PTO grants a patent does not necessarily mean that any invention claimed in the patent is, in fact, legally entitled to the protection of a patent. One or more claims may, in fact, not be patentable under the law. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is not entitled to patent protection because it does not meet the requirements for a patent. In other words, an accused infringer may defend a suit for patent infringement on the grounds that the patent is invalid.[1]

AUTHORITY: The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 1.1 (June 17, 2009).

---

[1] The Parties request that the Court show the Federal Judicial Center's video "Introduction to Patents" at the end of this Instruction.

**1.2     THE PATENTS INVOLVED IN THIS CASE**

Let's take a moment to look at U.S. Patent No. 6,006,227, one of the patents in this case. The cover page of the patent identifies the date the patent was granted and patent number along the top, as well as the inventor's name, the filing date, and a list of the references considered in the PTO.

The specification of the patent begins with an abstract, also found on the cover page.  The abstract is a brief statement about the subject matter of the invention.  Next come the drawings. The drawings illustrate various aspects or features of the invention.  The written description of the invention appears next and is organized into two columns on each page.  The specification ends with numbered paragraphs.  These are the patent claims.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 1.2 (June 17, 2009).

### 1.3    THE POSITIONS OF THE PARTIES

To help you follow the evidence, I will now give you a summary of the positions of the parties.  The parties in this case are Mirror Worlds, LLC or Mirror Worlds, Mirror Worlds Technologies, Inc. or MWT, and Apple Inc. or Apple.  The case involves five patents.  Four of the patents, U.S. Patent Nos. 6,006,227, 6,638,313, 6,725,427, and 6,768,999, are owned by Mirror Worlds.  The fifth patent, U.S. Patent No. 6,613,101, is owned by Apple.  For convenience, the parties and I will often refer to each patent by the last three digits of the patent number.  We will also refer to the four patents owned by Mirror Worlds as the Mirror World patents and the patent owned by Apple as the Apple Patent.

Mirror Worlds contends that Apple has in the past and/or continues to make, use, offer to sell, sell, or import products and/or methods that infringe claims 13-17, 20 and 22 of the '227 Patent; claims 1, 2, 5, 5-10, 13, 15-19, 22, 24-26, 29, 31-34, 37 and 39 of the '427 Patent claims 1-4 and 9-11 of the '313 Patent; and claim 1 of the '999 Patent.  Apple alleges that the asserted claims are not infringed and are also invalid.

[Plaintiff proposes: After Mirror Worlds sued Apple for patent infringement of the Mirror Worlds Patents, Apple countersued MWT for infringement of its '101 Patent.][2]  Apple contends that MWT has made, used, offered to sell, sold, or imported products and/or methods that infringe claims of the '101 patent.  MWT alleges that the asserted claims are invalid and not

---

[2] Apple objects to this sentence as unnecessary and confusing.

infringed.  [Plaintiff proposes: MWT also asserts that Apple's claim is barred by laches, estoppel, and waiver].[3]

To fulfill your duties as jurors, you must decide whether claims of the patents have been infringed and whether those claims are invalid.  If you decide that any claim of the patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to the patent holder to compensate for that infringement.  You will also need to decide whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give.  I will take willfulness into account later in the proceedings.

It is my job as judge to determine the meaning of any claim language that needs interpretation.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.


AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 1.3 (June 17, 2009).

---

[3] Apple objects to this sentence as MWT has failed to provide discovery or a substantive interrogatory response regarding these defenses.  For example, MWT failed to provide any facts or theories in its interrogatory response to establish how the delay was unreasonable or greater than six years, any facts to establish how the delay prejudiced MWT, any facts to establish there was a misleading communication, reliance on the communication or material harm, or any facts to establish an intention to surrender a known right.  Therefore, MWT should be precluded from ambushing Apple with any new such theories at trial.  Moreover, such issues are decided by the Court and should not be presented to the jury.  However, should the Court decide to allow this sentence, Apple reserves the right to include the following sentence regarding its equitable defenses to the Mirror Worlds patents:  "Apple also asserts that Mirror Worlds claims are barred by laches, estoppel and prosecution history estoppel."

### 1.4     BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means the evidence must persuade you that the claim or defense is more probable than not.

You should base your decision on all of the evidence, regardless of which party presented it.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 1.4 (June 17, 2009).

## 1.5    BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means the evidence has persuaded you that the claim or defense is highly probable. Such evidence requires a higher standard of proof than proof by a preponderance of the evidence.

Again, you should base your decision on all of the evidence, regardless of which party presented it.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 1.5 (June 17, 2009).

## 1.6   NOTETAKING – PERMITTED (PLAINTIFF'S PROPOSED INSTRUCTION)[4]

During this trial, I will permit you to take notes.  Of course, you are not obliged to take notes.  If you do not take notes, you should not be influenced by the notes of another juror, but should rely upon your own recollection of the evidence.

Because many courts do not permit notetaking by jurors, a word of caution is in order.  You must not allow your notetaking to distract you from the proceedings.

Frequently, there is a tendency to attach too much importance to what a person writes down.  Some testimony that is considered unimportant at the time presented, and thus not written down, may take on greater importance later in the trial in light of all of the evidence presented, the final arguments, and my instructions on the law.

Accordingly, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Your memory should be your greatest asset when it comes time to deciding this case.

AUTHORITY: K. O'Malley, J. Grenig, W. Lee, Federal Jury Practice and Instructions (Civil) ("Federal Jury Practice and Instructions") §§ 101.13.

---

[4] Apple objects to this instruction in its entirety as it is unnecessary in light of the lengthy instructions proposed by the parties.

**1.7     EVIDENCE IN THE CASE (PLAINTIFF'S PROPOSED INSTRUCTION)**[5]

The evidence in this case will consist of the following:

- The sworn testimony of the witnesses, no matter which side called the witness or elicited the testimony in question.

- All exhibits received into evidence, no matter which side may have produced the exhibit.

- Any facts or events I may have judicially noticed. When I declare that I will take judicial notice of some fact or event, you must accept that fact as true.

- Depositions may also be received into evidence. Depositions contain the sworn, recorded answers of a witness to questions asked by the lawyers in advance of the trial. In some cases, a portion of a deposition may be played for you on videotape, or it may be read to you word-for-word by the attorneys. You should accept deposition testimony and judge its weight and credibility in the same way you would if the witness had testified live on the witness stand.

Statements and arguments by the trial lawyers are not evidence in this case, unless a trial lawyer is admitting or stipulating that a certain fact is true, or "publishing" a document by reading it to the jury.[6] A "stipulation" is an agreement by both parties that a certain fact is true. When the trial lawyers on both sides stipulate, or agree to, the existence of a fact, you must accept the stipulation as evidence and regard that fact as true, unless you are instructed otherwise.

If I sustain an objection to any evidence, or if I order certain evidence to be struck, you must entirely ignore that evidence and not draw any inferences from it.  I may admit some evidence for a limited purpose only.  If I make such an instruction, you must consider that

---

[5] Apple objects to this instruction in its entirety as it is unnecessary in light of the lengthy instructions proposed by the parties.  Moreover, this instruction is cumulative to Plaintiff's proposed instruction nos. "1.8 What Is Not Evidence," "1.9 Trial Procedure," and "2.3 Evidence In This Case."

[6] Should the Court allow this instruction, Apple objects to the wording of this sentence and requests the following be removed "unless a trial attorney is 'publishing' a document by reading it to the jury."

evidence only for the limited purpose I have identified and for no other purpose.  You are to consider only the evidence in this case. But in your consideration of the evidence, you are not limited to the exhibits or what you see or hear from the witnesses.  You may draw inferences or other conclusions from the facts that you have found to have been proven, provided they are reasonable and justified in light of your experience.

     AUTHORITY: Federal Jury Practice and Instructions, § 101.40, § 101.45 (use of evidence for limited purposes), § 105.02 (use of depositions as evidence).

### 1.8    WHAT IS NOT EVIDENCE (PLAINTIFF'S PROPOSED INSTRUCTION)[7]

In deciding the facts of this case, you are not to consider the following as evidence:

- Statements and arguments by the lawyers, unless a trial lawyer is admitting or stipulating that a certain fact is true, or "publishing" a document by reading it to the jury;

- Questions and objections by the lawyers;

- Testimony or exhibits I instruct you to disregard;

- My own questions, comments, instructions, or rulings;

- Your notes or the notes of other jurors; or

- Anything you may see or hear when the court is not in session, even if what you see or hear is said or done by one of the parties, its lawyers, or one of the witnesses.

AUTHORITY: Federal Jury Practice and Instructions § 101.44, § 101.13 (on notes, as modified), §§ 101.01, 101.10, 101.30 (on the judge's comments, instructions, etc., as modified).

---

[7] Apple objects to this instruction in its entirety as it is unnecessary in light of the lengthy instructions proposed by the parties.  Moreover, this instruction is cumulative to Plaintiff's proposed instructions nos. "1.7 Evidence In This Case," "1.9 Trial Procedure," and "2.3 Evidence In This Case."

### 1.9    TRIAL PROCEDURE[8]

We are about to commence the opening statements in the case.  Before we do that, I want to explain the procedures that we will be following during the trial and the format of the trial.  This trial, like all jury trials, comes in six phases.  We have completed the first phase, which was to select you as jurors.  We are now about to begin the second phase, the opening statements.  The opening statements of the lawyers are statements about what each side expects the evidence to show.  The opening statements are not evidence, but are meant to help you in your deliberations.

[Plaintiff proposes: The evidence is introduced in the third phase, when the witnesses will take the stand and the documents will be offered and admitted into evidence.  In the third phase, Mirror Worlds, as Plaintiff, goes first in calling witnesses to the witness stand to prove its contention that Apple has infringed the Mirror Worlds Patents, that Apple's infringement has been willful, and the amount of damages to which Mirror Worlds believes it is entitled.  These witnesses will be questioned by Mirror Worlds' counsel in what is called direct examination.  After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness.][9]

[Apple Proposes:  The evidence is introduced in the third phase, when the witnesses will take the stand and the documents will be offered and admitted into evidence.  Mirror Worlds will be the first to present its witnesses, who will be questioned by Mirror Worlds' counsel in what is

---

[8] Apple objects to this instruction in its entirety as it is unnecessary in light of the lengthy instructions proposed by the parties.

[9] Apple objects to this paragraph as unnecessary rhetoric regarding Mirror Worlds contentions and cumulative to instruction no. "2.11 Parties Contentions," which provide the parties contentions at the appropriate time.

called direct examination.  After the direct examination of a witness is completed, Apple has an opportunity to cross-examine the witness.]

After Mirror Worlds has presented its witnesses, Apple will call its witnesses, who will also be examined by Apple and cross-examined by Mirror Worlds.  [Plaintiff proposes: Apple will present its evidence responding to Mirror Worlds contentions that of infringement, willful infringement and damages.  Apple will also present its evidence that MWT has infringed its '101 Patent.][10]

The parties may present the testimony of a witness by reading from their deposition transcript or playing a videotape of the witness's deposition testimony.  A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced piecemeal, so you need to keep an open mind as the evidence comes in.  You are to wait until all the evidence comes in before you make any decisions.  In other words, keep an open mind throughout the entire trial.

After we conclude the third phase, the lawyers again have an opportunity to talk to you in what is called "closing argument,"  which  is the fourth phase of trial.  Again, what the lawyers

---

[10] Apple objects to this sentence as unnecessary rhetoric that merely reasserts Mirror Worlds contentions, which is cumulative to the contentions previously stated in the instruction. Additionally, these contentions are cumulative to instruction no. "2.11 Parties Contentions." Should the Court allow Mirror Worlds to include its contentions in this instruction, Apple reserves the right to replace the objected to sentence with the following:  "Apple will then present evidence to prove the invalidity and unenforceability of the Mirror Worlds patents, evidence to prove that Mirror Worlds infringed Apple's Patent, evidence to prove that Mirror Worlds infringement was willful, and evidence regarding the amount of damages to which Apple is entitled."

say is not evidence.  The closing arguments are not evidence for you to consider in your deliberations.  They are meant to help you in making your decisions.

The fifth phase of the trial is when I read you the jury instructions.  In that phase, I will instruct you on the law.  I have already explained to you a little bit about the law.  But in the fifth phase of the trial, I will explain the law in much more detail.

Finally, in the sixth phase of the trial, it will be time for you to deliberate.  You can then evaluate the evidence, discuss the evidence among yourselves, apply my legal instructions and claim interpretations to the facts as you find them, and make a decision in the case. You are the exclusive judges of the facts.  My role is only to explain to you the rules of law that apply in this case and the meaning of the patent claims at issue, except to the extent that I have previously ruled on the infringement or validity of certain claims.

Nothing I say or do during the course of the trial is intended to indicate what the facts or verdict should be, or that I am favoring one party or the other or offering any opinion on the merits of their case.  You and you alone are the judges of the facts of this case.


AUTHORITY: AIPLA Model Patent Jury Instructions § III.

### 1.10    GLOSSARY OF PATENT AND TECHNICAL TERMS

To assist you in your deliberations, I have included a Glossary of Patent and Technical Terms that identifies terms used in patent matters and gives you a definition of those terms.

### GLOSSARY OF PATENT TERMS

**Application** – The initial papers filed by the applicant with the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims** – The numbered sentences appearing at the end of the patent that define the invention.  The words of the claims define the scope of the patent holder's exclusive rights during the life of the patent.  Claims can be independent or dependent.  An independent claim is self-contained.  A dependent claim refers back to an earlier claim and includes the requirements of the earlier claim.

**File wrapper** – Another term for the "prosecution history" defined later.

**License** – Permission to use or make the patented invention, or perform any of the other exclusive rights granted by the patent, which may be granted by a patent holder (or a prior licensee) in exchange for a fee called a "royalty" or other types of payment.

**Office action** – Communication from the patent examiner regarding the patent application.

**Patent examiners** – Personnel employed by the PTO who review (examine) patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable and whether the specification adequately describes and enables the claimed invention.

-16-

**Prior art** – Prior art is not art as one might generally understand the word art. Rather, prior art is a technical term relating to patents. In general, it includes things that existed before the claimed invention and might typically be a patent or a printed publication. I will give you a more specific definition of prior art later.

**Prosecution history** – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant.

**Specification** – The information that appears in the patent and concludes with one or more claims. The specification includes the written text and the drawings (if any). In the specification, the inventor should provide a description telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so, and what the inventor believed at the time of filing to be the best way of making the invention.

**Ordinary skill in the art** – The level of experience, education, and/or training that those individuals who worked in the area of the invention ordinarily possessed at the time of the effective filing date of the patent application.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 1.6 (June 17, 2009).

## 2.   FINAL INSTRUCTIONS

### 2.1   GENERAL INSTRUCTIONS AT CLOSE OF TRIAL (PLAINTIFF'S PROPOSED INSTRUCTION)[11]

Members of the jury, now that you have heard all the evidence and the arguments of counsel, it is my duty to instruct you on the law applicable to this case.  It is your duty to follow the law as I shall state it to you and to apply that law to the facts as you find them from the evidence in this case.  You must consider the instructions as a whole and not single out any one instruction as stating the law.  You are not to be concerned with the wisdom of any rule of law stated by me.  You must follow and apply the law as I give it to you.

The lawyers have properly referred to some of the governing rules of law in their arguments.   If there is any difference between the law stated by the lawyers and as stated in these instructions, you are governed by my instructions.  It is a violation of your sworn duty as jurors to base your verdict on any view of the law other than that given in the instructions of this Court, regardless of any opinion you may have as to what the law is or ought to be.

Nothing I say in these instructions indicates that I have any opinion about the facts.  You, not I, have the duty to determine the facts.  You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect you to carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

AUTHORITY: Federal Jury Practice and Instructions §§ 103.01.

---

[11] Apple objects to this instruction in its entirety as it is unnecessary in light of the lengthy instructions proposed by the parties.

## 2.2    INSTRUCTIONS APPLY TO EACH PARTY; ALL PERSONS EQUAL BEFORE THE LAW – ORGANIZATIONS (PLAINTIFF'S PROPOSED INSTRUCTION)[12]

Unless I state otherwise, you should apply each instruction separately, individually, and equally to Mirror Worlds, MWT and Apple in this case.

This case should be considered and decided by you as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  A corporation is entitled to the same fair trial as a private individual.  All persons, including corporations, stand equal before the law and are to be treated as equals.

AUTHORITY: Federal Jury Practice and Instructions §§ 103.10, 103.12.

---

[12] Apple objects to this instruction in its entirety as it is unnecessary in light of the lengthy instructions proposed by the parties.

### 2.3    EVIDENCE IN THE CASE (PLAINTIFF'S PROPOSED INSTRUCTION)[13]

I will start by explaining the general rules of evidence that apply in every civil trial and some of the rules you must follow in evaluating particular testimony.

It would be a violation of your sworn duty as jurors to base a verdict upon any evidence not admitted in this case.  Unless you are instructed otherwise, the evidence in this case consists of the following:

- sworn testimony of the witnesses, regardless of who called or examined the witness;

- all exhibits received into evidence, including documents and deposition excerpts, regardless of who may have produced them; and

- all facts and events that a party may have admitted; that both parties stipulated, or agreed, to; and

- all facts and events that I judicially noticed during the trial.

Statements and arguments by the trial lawyers are not evidence, unless a trial attorney is "publishing," or reading, a document in evidence to the jury.[14]  The trial lawyers are not witnesses. What they said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  However, when the trial lawyers on both sides stipulated, or agreed, to the existence of a fact, you must accept their stipulation and regard that fact as proved, unless you are instructed otherwise.

You must entirely disregard, however, any evidence as to which I have sustained an objection and any evidence that I have ordered struck.

---

[13] Apple objects to this instruction in its entirety as it is unnecessary in light of the lengthy instructions proposed by the parties and cumulative and duplicative of other instructions, such as Trial Procedure.  Moreover, this instruction is cumulative to Plaintiff's proposed instructions nos. "1.7 Evidence In This Case," "1.8 What Is Not Evidence," and "1.9 Trial Procedure."
[14] Should the Court allow this instruction, Apple objects to the wording of this sentence and requests the following be removed:  "unless a trial attorney is 'publishing' or reading a document in evidence to the jury."

Also, the law permits me to comment to you on the evidence in the case.  These comments are only an expression of my opinions as to the facts.  My comments are not evidence, and you may disregard them entirely if you wish, since you as jurors are the sole judges of the facts and are not bound by any comments or opinions expressed by me or the lawyers in this case.

AUTHORITY: Federal Jury Practice and Instructions, §§ 103.30, 103.33.

## 2.4     DIRECT AND CIRCUMSTANTIAL EVIDENCE (PLAINTIFF'S PROPOSED INSTRUCTION)[15]

Generally speaking, there are two categories of evidence presented during a trial:  "direct evidence" and "circumstantial evidence."

"Direct evidence" is direct proof of a fact, such as testimony by a witness who asserts or claims to have actual knowledge of a fact, or who testifies about what he or she actually said, heard, or did.

"Circumstantial or indirect evidence" is proof of one or more facts, or a chain of facts and circumstances, from you which you could find the existence or non-existence of another fact.

As a general rule, the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence.  Nor is a greater degree of certainty required of circumstantial evidence.  You should consider both kinds of evidence, and you are required to find the facts in accordance with all the evidence in this case, both direct and circumstantial. you are to decide how much weight to give to any evidence.


AUTHORITY: Federal Jury Practice and Instructions §§ 101.42, 104.05.

---

[15] Apple objects to this instruction in its entirety as it is unnecessary in light of the lengthy instructions proposed by the parties.

**2.5    "INFERENCES" DEFINED (PLAINTIFF'S PROPOSED INSTRUCTION)[16]**

You are to consider only the evidence in the case.  However, you are not limited to the statements of the witnesses or the exact wording of the documents.  In other words, you are not limited to what you see and hear as the witnesses testify.  You may draw from the facts that you find have been proved reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.


AUTHORITY: Federal Jury Practice and Instructions § 104.20.

---

[16] Apple objects to this instruction in its entirety as it is unnecessary in light of the lengthy instructions proposed by the parties.

**2.6     CREDIBILITY OF WITNESSES; DISCREPANCIES IN TESTIMONY (PLAINTIFF'S PROPOSED INSTRUCTION)[17]**

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe.  You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.

In considering the credibility of any witness, you may take into account many factors, including the witness's opportunity and ability to see, hear, or know the things he or she has testified about; the quality of the witness's memory; the witness's appearance or manner while testifying; the witness's interest in the outcome of the case; any bias or prejudice the witness may have; any relation the witness may have to either side of the case; the manner in which each witness might be affected by the verdict; the extent to which other evidence may support or contradict the witness's testimony; and the reasonableness of the witness's testimony in light of all the evidence.

You should carefully examine all the testimony given, the circumstances under which each witness testified, and every matter in evidence tending to show whether a witness is worthy of belief Consider each witness's intelligence, motive, state of mind, and demeanor or manner while testifying.

Inconsistencies and discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony, in whole or in part. Two or more persons seeing an event may see or hear it differently.  In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

---

[17] Apple objects to this instruction in its entirety as it is unnecessary in light of the lengthy instructions proposed by the parties.

After making your judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves.  You may believe everything a witness says, part of it, or none at all.  In other words, you may accept or reject the testimony of each witness, in whole or in part.

In addition, the weight of the evidence does not necessarily depend upon the number of witnesses who have testified to the existence or non-existence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a large number of witnesses to the contrary.

AUTHORITY: Federal Jury Practice and Procedure, §§ 101.43, 105.01.

### 2.7    IMPEACHMENT INCONSISTENT STATEMENT OR CONDUCT (PLAINTIFF'S PROPOSED INSTRUCTION)[18]

A witness may be discredited or impeached by contradictory documentary or testimonial evidence or by evidence that at some other time the witness said or did something, or failed to say to do something, that is inconsistent with the witness's present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness as much or as little credibility as you think it deserves.  If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness's other testimony, and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done if it was done voluntarily and intentionally and not because of mistake or accident or some other innocent reason.

AUTHORITY: Federal Jury Practice and Instructions § 105.04.

---

[18] Apple objects to this instruction in its entirety as it is unnecessary in light of the lengthy instructions proposed by the parties.

**2.8    EFFECT OF PRIOR INCONSISTENT STATEMENTS OR CONDUCT (PLAINTIFF'S PROPOSED INSTRUCTION)[19]**

Evidence that, at some other time while not under oath, a witness who is not a party to this action has said or done something inconsistent with the witness's testimony at trial may be considered for the sole purpose of judging the credibility of the witness.  However, such evidence may never be considered as evidence of proof of the truth of any such statement.

Where the witness is a party to the case, and by such statement or other conduct admits some fact or facts against the witness's interest, then such statement or other conduct, if knowingly made or done, may be considered as evidence of the truth of the fact or facts so admitted by such party, as well as for the purpose of judging the credibility of the party as a witness.

An act or omission is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

AUTHORITY: Federal Jury Practice and Instructions, § 105.09.

---

[19] Apple objects to this instruction in its entirety as it is unnecessary in light of the lengthy instructions proposed by the parties.

### 2.9    EXPERT WITNESSES (PLAINTIFF'S PROPOSED INSTRUCTION)[20]

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists for "expert witnesses."  An expert witness is a person who, by education and experience, has become expert in some art, science, profession, or calling.  Expert witnesses may state their opinions as to matters in which they profess to be an expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons the expert gave in support of his or her opinion are not sound, or if you feel that an expert's opinion is outweighed by other evidence, you may disregard that expert's opinion, in whole or in part.

AUTHORITY: Federal Jury Practice and Instructions § 104.40.

---

[20] Apple objects to this instruction in its entirety as it is unnecessary in light of the lengthy instructions proposed by the parties.

-28-

## 2.10    CHARTS AND SUMMARIES (PLAINTIFF'S PROPOSED INSTRUCTION)[21]

Certain charts and summaries have been shown to you in order to help explain facts disclosed by documents, testimony, and other evidence in the case.  These charts or summaries are not themselves evidence or proof of any facts.  If the charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

In other words, the charts or summaries are used only as a matter of convenience.  To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in this case, you may disregard them in whole or in part.

AUTHORITY: Federal Jury Practice and Instructions § 104.40.

---

[21] Apple objects to this instruction in its entirety as it is unnecessary in light of the lengthy instructions proposed by the parties and cumulative ion view of other instructions provided such as Trial Procedure.

## 2.11    CONTENTIONS OF THE PARTIES

Mirror Worlds contends that Apple has in the past and/or continues to make, use, offer to sell, sell or import products and/or methods that infringe at least one of claims 13-17, 20 and 22 of the '227 Patent; claims 1, 2, 5, 7-10, 13, 15-19, 22, 24-26, 29, 31-34, 37 and 39 of the '427 Patent claims 1-4 and 9-11 of the '313 Patent; or claim 1 of the '999 Patent.  Apple denies the allegations that it has infringed any claim of the Mirror World Patents.  Apple also contends that the '227 Patent, the '313 Patent, the '427 Patent, and the '999 Patent are invalid because:  they are not new over the prior art; they would have been obvious in view of the prior art; and they fail to satisfy the written description and enablement requirements.  [Apple proposes: Apple also contends that the '227 Patent, the '313 Patent, the '427 Patent, and the '999 Patent are unenforceable due to inequitable conduct by Mirror Worlds in front of the Patent Office. Finally, Apple contends that the '999 patent is invalid for improper inventorship.][22]

Apple contends that MWT has made, used, offered to sell, sold, or imported products and/or methods that infringe claims 1-12 of Apple's '101 patent.  MWT denies those allegations and contends that the claims of the '101 patent are invalid because they would have been obvious

---

[22] Plaintiff objects to these sentences as these are issues for the Court.

in view of the prior art.   [Plaintiff proposes: MWT also contends that Apple's claim is barred by laches, estoppel, and waiver.][23]

Invalidity is a defense to infringement.  Therefore, even though the PTO examiner has allowed the claims of the '227, '313, '427, '999, and '101 patents, you, the jury, must decide whether the claims of the patents are invalid.

[Plaintiff proposes: Your job is to decide whether claims 13-17, 20 and 22 of the '227 Patent; claims 1, 2, 5, 7-10, 13, 15-19, 22, 24-26, 29, 31-34, 37 and 39 of the '427 Patent; claims 1-4 and 9-11 of the '313 Patent; and claim 1 of the '999 Patent have been infringed by Apple; and whether claims 1-12 of the '101 Patent have been infringed by MWT.  You also must determine whether claims 13-17, 20 and 22 of the '227 Patent; claims 1, 2, 5, 7-10, 13, 15-19, 22, 24-26, 29, 31-34, 37 and 39 of the '427 Patent; claims 1-4 and 9-11 of the '313 Patent; and claim 1 of the '999 Patent are invalid, and whether claims 1-12 of the '101 patent are invalid.][24]

[Apple proposes:  Your job is to decide whether the asserted claims of the '227 Patent , '313 Patent, '427 Patent, '999 Patent, and '101 Patent have been infringed and whether any of the asserted claims of those '227, '313, '427, '999, and '101 patents are invalid.]

---

[23] Apple objects to this sentence as MWT has failed to provide discovery or a substantive interrogatory response regarding these defenses.  For example, MWT failed to provide any facts or theories in its interrogatory response to establish how the delay was unreasonable or greater than six years, any facts to establish how the delay prejudiced MWT, any facts to establish there was a misleading communication, reliance on the communication or material harm, or any facts to establish an intention to surrender a known right.  Therefore, MWT should be precluded from ambushing Apple with any new such theories at trial.  Moreover, such issues are decided by the Court and should not be presented to the jury.  However, should the Court decide to allow this sentence, Apple reserves the right to include the following sentence regarding its equitable defenses to the Mirror Worlds patents:  "Apple also asserts that Mirror Worlds claims are barred by laches, estoppel and prosecution history estoppel."

[24] Apple objects to these sentences as confusing for the jury since the asserted claims were defined in the previous paragraphs.

If you decide that any claim of a patent has been infringed and that claim is not invalid, you will then need to decide any money damages to be awarded to the patent holder as compensation for the infringement.

You will also need to decide whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damages award you give.  I will take any determination of willfulness into account later in the proceedings.


AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 2.1 (June 17, 2009).

**2.12    AGREEMENTS ON BEHALF OF CORPORATIONS (DEFENDANT'S PROPOSED INSTRUCTION)[25]**

You have heard testimony and seen evidence regarding various agreements between corporations.  In the course of negotiating and executing an agreement on behalf of a corporation, the corporation's directors and officers have a fiduciary duty to act in the corporation and shareholder's best interest and enter into the most beneficial agreement possible.  Furthermore, directors and officers have a duty to act with the highest degree of loyalty, trust, and allegiance toward the corporation and its shareholders, and with the utmost candor, unselfishness and good faith.  Corporate officers and directors must affirmatively protect the interests of the corporation and shareholders and refrain from doing anything that would injure the corporation or deprive it or its shareholders of profit or advantage.

AUTHORITY:  *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939); *FDIC v. Wheat*, 970 F.2d 124, 130-31 n.13 (5th Cir. 1992).

---

[25] Plaintiff objects to this instruction as being unnecessary and confusing for the jury.

[If this instruction is included Plaintiff proposes to also include: You must also bear in mind that there is a difference between an arm's length transaction between competitors and an agreement between related entities.  Just because a corporation enters into an agreement with a related entity for a lower price does not mean that it would enter into a similar agreement with an unrelated entity or that it is injuring the corporation or depriving it or its shareholders of profit or advantage.][26, 27]

---

[26] *Minks v. Polaris Indus.*, 546 F. 3d 1364, 1373 (Fed. Cir. 2008).

[27] Apple objects to the inclusion of this paragraph as being a misstatement of the law, and unsupported by the cited case.  Moreover, such an instruction is inapplicable to the facts of this case.  Unlike *Minks v. Polaris Indus.*,, this sale of the patents from Mirror Worlds Technologies to Recognition Interface was not "intra-family" sale of the patents, nor was it a license from the inventor to his own company.  *See* 546 F. 3d 1364, 1373 (Fed. Cir. 2008).

### 3.   THE MEANING OF CLAIM TERMS (DEFENDANT'S PROPOSED INSTRUCTION)

I have defined certain words and phrases in the patent claims.  During your deliberations you must apply these meanings:

**For the Mirror Worlds Patents:**

1. The claim language "stream" as used in the Mirror Worlds Patents means a time-ordered sequence of documents that functions as a diary of a person or an entity's electronic life and that is designed to have three main portions: past, present, and future.

2. The claim language "main stream" as used in the '227 Patent and the '313 Patent means a stream that is inclusive of every data unit, or document, received by or generated by the computer system.

3. The claim language "substream" as used in the '227 Patent and the '313 Patent means a stream that is a subset of data units, or documents, yielded by a filter on a stream, the filter identifying certain documents within the stream.

4. The claim language "stream based operating system" as used in the '427 Patent and "document stream based system" as used in the '313 Patent and the '427 Patent means an operating system that is based on a time-ordered sequence of documents that functions as a diary of a person or an entity's electronic life and that is designed to have three main portions: past, present, and future.

5. The claim language "timestamp to identify" as used in the '227 Patent means a date and time value that uniquely identifies each document.

6. The claim language "glance views" as used in the '313 Patent, '427 Patent and '999 Patent means an abbreviated presentation of a document.

-35-

7.  The claim language "archiving" as used in the '313 Patent and the '427 Patent means copying or moving documents to a secondary storage medium.

8.  The claim language "document organization facility" as used in the '427 Patent means software that organizes documents.

9.  The claim language "data unit" as used in the '227 Patent means an item of information of significance to the user that the user considers as a unit.

10. The claim language "enterprise information management system" as used in the '999 Patent means a system that manages information for an enterprise or organization.

11. The claim language "controlling operating system" as used in the '427 Patent means an operating system that utilizes subsystems from another operating system.

12. The claim language "complex analysis" as used in the '427 Patent means analysis of the content of a documents involving selection of important words, pictures, and/or sounds in the document.

13. The claim language "document object model" as used in the '999 Patent means a consistent structure containing information about information assets of diverse types, created by diverse software.

14. The claim language "time-ordered stream" as used in the '999 Patent means a time-ordered sequence of documents that functions as a diary of a person or an entity's electronic life and that is designed to have three main portions: past, present, and future.

15. The claim language "chronological indicator" as used in the '227 Patent and the '427 Patent means a data structure containing at least a timestamp.

16. The claim language "persistent streams" as used in the '227 Patent means streams that are dynamically updated.

17. The claim language "visual streams" as used in the '227 Patent means a representation on a display device of a stream.

18. The claim language "document representation" as used in the '427 Patent means a graphical depiction of a document, or data unit.

19. The claim language "operating system" as used in the '313 Patent means the software that handles basic computer operations (e.g., managing input/output, memory, applications, etc.) and presents an interface to the user.

20. The claim language "document" as used in the '313 Patent and the '427 Patent means "a data unit" except in the '313 Patent, Claim 1 at col. 15:25, 15:26, 15:31, and 15:33 (i.e. each appearance of "document" in the fifth and sixth paragraphs of the claim after the preamble) and Claim 9 at col. 16:28, 16:29, and 16:34 (i.e. each appearance of "document" in the final two paragraphs of the claim, except the word "documents" in line 16:36), "a document representation".

21. The claim language "selected indicators" as used in the '427 Patent means data structures that contain information relating to respective documents.

22. The claim language "interrupt" as used in the '427 Patent means an external signal to a program or process that may cause the program or process to take some action.

23. The claim language "a set of commands applicable to the document representations in the stack" as used in the '427 Patent means commands associated with operations that can be performed on the documents whose document representations are in the stack.

24. The claim language "marking being common to a class of documents" as used in the '427 Patent means marking in the same way document representations associated with documents having the same type or other characteristic.

25. The claim language "time-based indicators" as used in the '313 Patent and the '427 Patent means chronological indicators.

26. The claim language "a substream that persists" as used in the '313 Patent means a substream that is dynamically updated.

27. The claim language "information assets" as used in the '999 Patent means data units of significance to the users in an enterprise.

28. The claim language "browse card" as used in the '999 Patent means a graphical depiction of a document, or data unit.

29. The claim language "essentially in real time" as used in the '999 Patent means without significant delay as perceived by a user.


**For the Apple Patent:**

1. The claim language "a graphical iconic representation of a collection of said first plurality of documents" means a collection of two or more document icons displayed together.

2. The claim language "adjacent" means close to.

3. the structure disclosed in the Apple Patent that carries out the function of "displaying a graphical iconic representation of a collection of said first plurality of documents" is: a video display screen, such as a video (CRT) display monitor or a liquid crystal display, and a display controller, coupled to a system bus that receives commands and data from a processor, and structural equivalents.

4. the structure disclosed in the Apple Patent that carries out the function of "displaying a first indicia of a first document of said collection by selecting a first position from said graphical iconic representation" is (a) a video display screen, such as a video (CRT) display monitor or a liquid crystal display, and a display controller, coupled to a system bus that receives

-38-

commands and data from a processor, and structural equivalents; and (b) an I/O controller to control receiving signals from a cursor control device such as a mouse, and structural equivalents.

5.  the structure disclosed in the Apple Patent that carries out the function of "displaying in series a second indicia of a second document and a third indicia of a third document by positioning said cursor first on a second position on said graphical iconic representation next on a third position on said graphical iconic representation" is: (a) a video display screen, such as a video (CRT) display monitor or a liquid crystal display, and a display controller, coupled to a system bus that receives commands and data from a processor, and structural equivalents; and (b) an I/O controller to control receiving signals from a cursor control device such as a mouse, and structural equivalents.

Other than the words which I have interpreted for you, you should give the rest of the words in the patent claims their ordinary meaning in the context of the patent specifications and prosecution histories as understood by one of ordinary skill in the art.

AUTHORITY:  The National Jury Instruction Project Model Patent Jury Instructions 3.3; Memorandum and Order, February 16, 2010 ("Markman Decision"), Dkt No. 178; Memorandum Opinion and Order (Appendix B), August 11, 2010, Dkt No. 302.

**4.      INFRINGEMENT**

**4.1      DIRECT INFRINGEMENT—GENERALLY**

A patent claim may be directly infringed in two ways.  A claim may be "literally"

infringed or it may be infringed under the "doctrine of equivalents."  I will now instruct you on

the specific rules you must follow to determine whether Mirror Worlds has proven that Apple

has [Apple proposes: literally] infringed one or more claims of the Mirror Worlds Patents; and,

whether Apple has proven that MWT has infringed one or more claims of Apple's patent-in-suit

[Apple proposes: either literally or under the doctrine of equivalents].

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions,
Instruction 3.1 (June 17, 2009).

### 4.2    DIRECT INFRINGEMENT—LITERAL INFRINGEMENT

You must decide whether Apple has made, used, sold or offered for sale within the United States, or imported into the United States, a product or method covered by one or more of claims 13-17, 20 and 22 of the '227 patent, one or more of claims 1-4 and 9-11 of the '313 patent, one or more of claims 1, 2, 5, 7, 8-10, 13, 15-19, 22, 24-26, 29, 31-34, 37 and 39 of the '427 patent, and/or claim 1 of the '999 patent.  You must also decide whether MWT has made, used, sold, or offered for sale within the United States, or imported into the United States, a product or method covered by one or more of claims 1-12 of the '101 patent.  You must compare each claim to the alleged infringer's product or method to determine whether every requirement of the claim is included in the accused product or method.

To prove literal infringement, the patent holder must prove that it is more probable than not that the alleged infringer's accused product or use of an accused product includes every requirement or step in a single claim of their patents-in-suit.  If an accused product or use of an accused product omits any requirement or step recited in a claim of the patent holder's patent, the alleged infringer does not infringe that claim.  In making your determination, you must consider each claim separately, and each accused product separately.

For literal infringement, the patent holder is not required to prove that the alleged infringer intended to infringe or knew of the patent.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 3.2 (June 17, 2009); *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007) (a method claim "is infringed only where the alleged infringer performs or uses 'each and every step or element of a claimed method or product'"); *Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (Both the Supreme Court and this court have adhered to the fundamental principle that claims define the scope of patent protection . . . Infringement, either literally or under the doctrine of equivalents, does not arise by comparing the accused product with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee").

### 4.3     THE MEANING OF CLAIM TERMS(PLAINTIFF'S PROPOSED INSTRUCTION)[28]

I have defined certain words and phrases in the patent claims.  During your deliberations you must apply these meanings:

**<u>For the Mirror Worlds Patents:</u>**

6.  The claim language "stream" as used in the Mirror Worlds Patents means a time-ordered sequence of documents that functions as a diary of a person or an entity's electronic life and that is designed to have three main portions: past, present, and future.

7.  The claim language "main stream" as used in the '227 Patent and the '313 Patent means a stream that is inclusive of every data unit, or document, received by or generated by the computer system.

8.  The claim language "substream" as used in the '227 Patent and the '313 Patent means a stream that is a subset of data units, or documents, yielded by a filter on a stream, the filter identifying certain documents within the stream.

9.  The claim language "stream based operating system" as used in the '427 Patent and "document stream based system" as used in the '313 Patent and the '427 Patent means an operating system that is based on a time-ordered sequence of documents that functions as a diary of a person or an entity's electronic life and that is designed to have three main portions: past, present, and future.

---

[28] Apple objects to this instruction being read during instructions on Infringement as this instruction applies equally to the instruction on Invalidity.  Therefore, Apple requests this instruction be moved up to be read prior to instruction on Infringement.

Plaintiff requests that the instructions be read at this point in accordance with The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 3.3 (June 17, 2009).

10. The claim language "timestamp to identify" as used in the '227 Patent means a date and time value that uniquely identifies each document.

11. The claim language "glance views" as used in the '313 Patent, '427 Patent and '999 Patent means an abbreviated presentation of a document.

12. The claim language "archiving" as used in the '313 Patent and the '427 Patent means copying or moving documents to a secondary storage medium.

13. The claim language "document organization facility" as used in the '427 Patent means software that organizes documents.

14. The claim language "data unit" as used in the '227 Patent means an item of information of significance to the user that the user considers as a unit.

15. The claim language "enterprise information management system" as used in the '999 Patent means a system that manages information for an enterprise or organization.

16. The claim language "controlling operating system" as used in the '427 Patent means an operating system that utilizes subsystems from another operating system.

17. The claim language "complex analysis" as used in the '427 Patent means analysis of the content of a documents involving selection of important words, pictures, and/or sounds in the document.

18. The claim language "document object model" as used in the '999 Patent means a consistent structure containing information about information assets of diverse types, created by diverse software.

19. The claim language "time-ordered stream" as used in the '999 Patent means a time-ordered sequence of documents that functions as a diary of a person or an entity's electronic life and that is designed to have three main portions: past, present, and future.

20. The claim language "chronological indicator" as used in the '227 Patent and the '427 Patent means a data structure containing at least a timestamp.

21. The claim language "persistent streams" as used in the '227 Patent means streams that are dynamically updated.

22. The claim language "visual streams" as used in the '227 Patent means a representation on a display device of a stream.

23. The claim language "document representation" as used in the '427 Patent means a graphical depiction of a document, or data unit.

24. The claim language "operating system" as used in the '313 Patent means the software that handles basic computer operations (e.g., managing input/output, memory, applications, etc.) and presents an interface to the user.

25. The claim language "document" as used in the '313 Patent and the '427 Patent means "a data unit" except in the '313 Patent, Claim 1 at col. 15:25, 15:26, 15:31, and 15:33 (i.e. each appearance of "document" in the fifth and sixth paragraphs of the claim after the preamble) and Claim 9 at col. 16:28, 16:29, and 16:34 (i.e. each appearance of "document" in the final two paragraphs of the claim, except the word "documents" in line 16:36), "a document representation".

26. The claim language "selected indicators" as used in the '427 Patent means data structures that contain information relating to respective documents.

27. The claim language "interrupt" as used in the '427 Patent means an external signal to a program or process that may cause the program or process to take some action.

28. The claim language "a set of commands applicable to the document representations in the stack" as used in the '427 Patent means commands associated with operations that can be performed on the documents whose document representations are in the stack.

29. The claim language "marking being common to a class of documents" as used in the '427 Patent means marking in the same way document representations associated with documents having the same type or other characteristic.

30. The claim language "time-based indicators" as used in the '313 Patent and the '427 Patent means chronological indicators.

31. The claim language "a substream that persists" as used in the '313 Patent means a substream that is dynamically updated.

32. The claim language "information assets" as used in the '999 Patent means data units of significance to the users in an enterprise.

33. The claim language "browse card" as used in the '999 Patent means a graphical depiction of a document, or data unit.

34. The claim language "essentially in real time" as used in the '999 Patent means without significant delay as perceived by a user.

**For the Apple Patent:**

35. The claim language "a graphical iconic representation of a collection of said first plurality of documents" means a collection of two or more document icons displayed together.

36. The claim language "adjacent" means close to.

37. the structure disclosed in the Apple Patent that carries out the function of "displaying a graphical iconic representation of a collection of said first plurality of documents" is: a video display screen, such as a video (CRT) display monitor or a liquid crystal display, and a

display controller, coupled to a system bus that receives commands and data from a processor, and structural equivalents.

38. the structure disclosed in the Apple Patent that carries out the function of "displaying a first indicia of a first document of said collection by selecting a first position from said graphical iconic representation" is (a) a video display screen, such as a video (CRT) display monitor or a liquid crystal display, and a display controller, coupled to a system bus that receives commands and data from a processor, and structural equivalents; and (b) an I/O controller to control receiving signals from a cursor control device such as a mouse, and structural equivalents.

39. the structure disclosed in the Apple Patent that carries out the function of "displaying in series a second indicia of a second document and a third indicia of a third document by positioning said cursor first on a second position on said graphical iconic representation next on a third position on said graphical iconic representation" is: (a) a video display screen, such as a video (CRT) display monitor or a liquid crystal display, and a display controller, coupled to a system bus that receives commands and data from a processor, and structural equivalents; and (b) an I/O controller to control receiving signals from a cursor control device such as a mouse, and structural equivalents.

Other than the words which I have interpreted for you, you should give the rest of the words in the patent claims their ordinary meaning in the context of the patent specifications and prosecution histories as understood by one of ordinary skill in the art.

AUTHORITY:  The National Jury Instruction Project Model Patent Jury Instructions 3.3; Memorandum and Order, February 16, 2010 ("Markman Decision"), Dkt No. 178; Memorandum Opinion and Order (Appendix B), August 11, 2010, Dkt No. 302.

### 4.4    OPEN-ENDED OR "COMPRISING" CLAIMS

The beginning, or preamble, of certain claims use the word "comprising." "Comprising" means "including" or "containing but not limited to."  That is, if you decide that an accused product or the use of an accused product includes all the requirements or steps in that claim, the claim is infringed.  This is true even if the accused method includes components or steps in addition to those requirements

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 3.4 (June 17, 2009); *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1361 (Fed. Cir. 2007); *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997).

### 4.5     INFRINGEMENT OF DEPENDENT CLAIMS

So far my instructions on infringement have applied to what are known as independent claims.  Both the Mirror Worlds Patents  and Apple Patent contain independent and dependent claims.  A dependent claim refers to another claim called a "base claim", while an independent claim does not refer to any other claim.  The base claim, from which a dependent claim depends, may be an independent claim or another dependent claim.  The dependent claim includes or incorporates each of the requirements of the base claim, and one or more additional requirements.

In order to find infringement of each of the dependent claims of the patents-in-suit, you must first determine whether the base claim from which it depends has been infringed.  If you decide that the base claim has not been infringed, then the dependent claim cannot have been infringed.  If you decide that the base claim has been infringed, you must then separately determine whether each additional requirement of the dependent claim has also been included in accused product or use of the accused product.  If each additional requirement has been included, then the dependent claim has been infringed.

The patent holder must prove that it is more probable than not that a patent claim has been infringed.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 3.7 (June 17, 2009); *Kim v. ConAgra Foods, Inc*., 465 F.3d 1312, 1316, n.1 (Fed. Cir. 2006) (dependent claims not infringed when independent claim not infringed).

### 4.6 DIRECT INFRINGEMENT—DOCTRINE OF EQUIVALENTS

[Plaintiff proposes: Mirror Worlds alleges that even if there is no literal infringement, the asserted patent claims of the Mirror Worlds Patents have been infringed under the "doctrine of equivalents."][29]

Apple alleges that even if there is no literal infringement, the asserted patent claims of the Mirror Worlds Patents have been infringed under the "doctrine of equivalents."

To prevail on its allegation of infringement, the patent holder must prove that it is more probable than not that the accused product or use of the accused product contains requirements identical or equivalent to each claimed requirement or step of the patented invention. You must proceed on a requirement-by-requirement or step-by-step basis. The patent holder must establish that each requirement in the claim is present in the accused product, either literally or under the doctrine of equivalents.

A claim requirement is present in an accused product or method under the doctrine of equivalents if the difference between the claim requirement and a corresponding aspect of the accused product or method is insubstantial.

In making this determination, you may consider whether the corresponding aspect or step performs substantially the same function in substantially the same way to achieve substantially the same result as the requirement in the claim. You may also consider whether people of ordinary skill in the art believed that the corresponding aspect or step of the accused product or

---

[29] Apple objects to this instruction as applied to Mirror Worlds as Mirror Worlds has failed to provide any particularized expert testimony or linking arguments regarding why elements of the accused device perform substantially the same function, in substantially the same way, to achieve substantially the same result as the corresponding elements of the patented invention, and therefore will be unable to establish infringement by the doctrine of equivalents.

method and the requirement recited in the patent claim were interchangeable at the time of the

alleged infringement.  The proper time for evaluating equivalency—and thus knowledge of

interchangeability between requirements—is the time of infringement, not the time the patent

was issued. Under the doctrine of equivalents, those of ordinary skill in the art do not have to

know of the equivalent when the patent application was filed or when the patent issued. Thus, the

inventor need not have foreseen, and the patent need not describe, all potential equivalents to the

invention covered by the claims. Also, changes in technique or improvements made possible by

technology developed after the patent application is filed may still be equivalent for the purposes

of the doctrine of equivalents.


   AUTHORITY: The National Jury Instruction Project, Model Patent Jury Instructions,
Instruction 3.8 (June 17, 2009).

**4.7     DIRECT INFRINGEMENT—MEANS-PLUS-FUNCTION CLAIMS**

Some patent claim requirements may describe a "means" for performing a function, rather than describing the structure that performs the function

For example, let's say that a patent describes a table in which the legs are glued to the tabletop. One way an inventor may claim the table is to require the tabletop, four legs, and glue between the legs and the tabletop. Another way to claim the table is to require the tabletop and the legs, but instead of stating "glue," the inventor states a "means for securing the legs to the tabletop." This second type of claim requirement is called a "means-plus-function" requirement. It describes a means for performing the function of securing the legs to the tabletop, rather than requiring the glue.

When a claim requirement is in means-plus-function form, it covers the structures described in the patent specification for performing the function stated in the claim and also any structure equivalent to the described structures. In my example, the claim covers a table using glue to secure the legs to the tabletop, as described in the patent, and any equivalent structure to glue that performs the function of securing the legs to the tabletop.

Claims 5-8 of the Apple Patent includes means-plus-function requirements. In instructing you about the meaning of a means-plus-function claim requirement, I will tell you, first, the function that is performed, and second, the structure disclosed in the patent specification that corresponds to that function.

To establish literal infringement of a claim that includes means-plus-function requirements, Apple must prove two things:

1. the relevant structure in the accused device performs the identical function I identified, and

2. the accused device employs a structure identical or equivalent to the structure described in the patent.

Where the structure in the accused device and the structure disclosed in the patent specification are not identical, Apple has the burden of proving that it is more probable than not that the relevant structure in the accused device, as I have identified it for you, is equivalent to the disclosed structure in the patent.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial for performing the required function. One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether people of ordinary skill in the art believed that the structure of the accused product and the structure in the patent were interchangeable at the time the patent was issued by the PTO.

If the function performed by the relevant structure in the accused device is not identical to the function recited in the means-plus-function requirement, infringement may be proved under the doctrine of equivalents. To prove equivalent infringement in such situation, Apple must prove that (following the guidelines for establishing equivalence set forth above):

1. the relevant structure in the accused device performs a function equivalent to the function specified in the claim, and

2. the accused device employs a structure identical or equivalent to the structure described in the patent.

[Plaintiff proposes: Claims 5-8 of the Apple Patent include means-plus-function requirements.  In instructing you about the meaning of a means-plus-function claim requirement, I will tell you, first, the function that is performed, and second the structure disclosed in the patent specification that corresponds to that requirement.  The court has found that:

40. the structure disclosed in the Apple Patent that carries out the function of "displaying a graphical iconic representation of a collection of said first plurality of documents" is: a video display screen, such as a video (CRT) display monitor or a liquid crystal display, and a display controller, coupled to a system bus that receives commands and data from a processor, and structural equivalents.

41. the structure disclosed in the Apple Patent that carries out the function of "displaying a first indicia of a first document of said collection by selecting a first position from said graphical iconic representation" is (a) a video display screen, such as a video (CRT) display monitor or a liquid crystal display, and a display controller, coupled to a system bus that receives commands and data from a processor, and structural equivalents; and (b) an I/O controller to control receiving signals from a cursor control device such as a mouse, and structural equivalents.

42. the structure disclosed in the Apple Patent that carries out the function of "displaying in series a second indicia of a second document and a third indicia of a third document by positioning said cursor first on a second position on said graphical iconic representation next on a third position on said graphical iconic representation" is: (a) a video display screen, such as a video (CRT) display monitor or a liquid crystal display, and a display controller, coupled to a system bus that receives commands and data from a processor, and structural equivalents; and (b) an I/O

-53-

controller to control receiving signals from a cursor control device such as a mouse, and structural equivalents.

You must use my interpretation of the means-plus-function element in your deliberations regarding infringement.][30]

AUTHORITY: The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 3.7 (June 17, 2009) §3.9; Memorandum and Order, February 16, 2010 ("Markman Decision"), Dkt. No. 178; Memorandum Opinion and Order (Appendix B), August 11, 2010, Dkt No. 302.

---

[30] Apple objects to this part of the instruction as the Court's claim constructions should be located together in a single instruction.  Plaintiff avers that it is important that the means plus function terms be explained to the jury in context of the means plus function instruction as per The National Jury Instruction Project, Model Patent Jury Instructions, Instruction  3.9 (June 17, 2009)

### 4.8    INDIRECT INFRINGEMENT (PLAINTIFF'S PROPOSED INSTRUCTION)[31]

In addition to their direct infringement, Mirror Worlds alleges that Apple indirectly infringed the Mirror Worlds Patents.

There are two types of indirect infringement: inducing infringement and contributory infringement. The act of encouraging or inducing others to infringe a patent is called "inducing infringement." The act of contributing to the infringement of others by, for example, supplying them with components for use in the patented invention, is called "contributory infringement."

AUTHORITY: The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 3.10 (June 17, 2009).

---

[31] Apple objects to this instruction in its entirety because Mirror Worlds' expert, Dr. Levy, failed to include any analysis regarding issues of indirect infringement, including infringement by inducement or contributory infringement in his expert report. In fact, Dr. Levy admitted that he was not asked to provide an opinion on indirect infringement, and did not do so. (See Apple Inc.'s Motion Under Daubert and Rule 26 to Limit the Testimony and Expert Reports of John Levy, Docket No. 220 at 7-8, and supporting Declaration of Jeffrey G. Randall, Ex. 11 at 206:4-209:3, 210:8-15, 212:6-215:14; see esp. id. at 206:15-18 ("Q. Were you asked to provide an opinion regarding indirect infringement of any of the Mirror Worlds patents? A. No, not specifically.")). Further, Dr. Levy's report contains no discussion of the legal standards for indirect infringement. Id. at 214:10-215:14.  Moreover, Mirror Worlds Infringement Contentions fail to provide any substantive analysis of indirect infringement by Apple, and any presentation of new theories at trial would nothing less than ambush litigation.

**4.9     INDUCING PATENT INFRINGEMENT (PLAINTIFF'S PROPOSED INSTRUCTION)[32]**

A party induces patent infringement if it purposefully causes, urges, or encourages another to infringe the claims of a patent. Inducing infringement cannot occur unintentionally.

This is different from direct infringement, which can occur unintentionally. To prove that Apple induced patent infringement, Mirror Worlds must prove that it is more probable than not that:

1. Apple actively encouraged or instructed another person on how to use a product or perform a process in a way that infringes at least one patent claim;

2. Apple knew of the patent at that time;

3. Apple knew, or should have known, that the encouragement or instructions would result in infringement of at least one patent claim; and

4. the other person infringed at least that one patent claim.

Mirror Worlds must prove that Apple had a specific intent to induce the infringement. Mirror Worlds must prove that Apple knowingly induced infringement, not merely that Apple knowingly induced the acts that constitute infringement.

---

[32] Apple objects to this instruction in its entirety because Mirror Worlds' expert, Dr. Levy, failed to include any analysis regarding issues of indirect infringement, including infringement by inducement or contributory infringement in his expert report. In fact, Dr. Levy admitted that he was not asked to provide an opinion on indirect infringement, and did not do so. (See Apple Inc.'s Motion Under Daubert and Rule 26 to Limit the Testimony and Expert Reports of John Levy, Docket No. 220 at 7-8, and supporting Declaration of Jeffrey G. Randall, Ex. 11 at 206:4-209:3, 210:8-15, 212:6-215:14; see esp. id. at 206:15-18 ("Q. Were you asked to provide an opinion regarding indirect infringement of any of the Mirror Worlds patents? A. No, not specifically.")). Further, Dr. Levy's report contains no discussion of the legal standards for indirect infringement. Id. at 214:10-215:14.  Moreover, Mirror Worlds Infringement Contentions fail to provide any substantive analysis of induced infringement by Apple, and any presentation of new theories at trial would nothing less than ambush litigation.

Intent to cause the acts that constitute direct infringement may be demonstrated by evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use.  The intent element is an objective, not subjective test.  In other words, you must look at Apple's actions, and not whether they desired to induce infringement.  While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.[33]

It is not necessary to show that Apple has directly infringed as long as you find that someone has directly infringed.  If there is no direct infringement by anyone, there can be no induced infringement.[34]

Inducement does not mean to actually force another to commit infringement.[35]

You are to consider all of the circumstances in considering whether Apple knew or should have known the induced actions would constitute infringement.  If Apple provided instructions and directions to perform the infringing acts through advertising or others sales methods or by supplying the components used in an infringing product or method with the knowledge and intent that its customers would use the components in a manner that would constitute the patented method, this may be evidence of inducement to infringe.[36]

AUTHORITY: The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 3.11 (June 17, 2009); AIPLA Model Patent Jury Instructions (2008) § 3.3; *Broadcom*

---

[33] Apple objects to this paragraph as unnecessary and cumulative, and outside the scope of the Model Instructions provided by the National Jury Instruction Project.

[34] Apple objects to this paragraph as unnecessary and cumulative, and outside the scope of the Model Instructions provided by the National Jury Instruction Project.

[35] Apple objects to this paragraph as unnecessary and cumulative, and outside the scope of the Model Instructions provided by the National Jury Instruction Project.

[36] Apple objects to this paragraph as unnecessary and cumulative, and outside the scope of the Model Instructions provided by the National Jury Instruction Project.

*Corp. v. Qualcomm Inc.*, 543 F.3d 683 (Fed. Cir. 2008); *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006); *Metabolite Labs., Inc. v. Lab Corp. of America*, 370 F.3d 1354, 1365 (Fed. Cir. 2004); *Water Technologies Corp. v. Calco Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988); *Aventis Pharms, Inc. v. Barr Labs, Inc.*, 411 F. Supp. 2d 490 (D. N.J. 2006).

### 4.10   CONTRIBUTORY INFRINGEMENT (PLAINTIFF'S PROPOSED INSTRUCTION)[37]

Contributory infringement occurs when a party with knowledge of the patent supplies a part, or a component, to another for use in a product, machine, or process that infringes a patent claim. Mirror Worlds must prove that it is more probable than not that contributory infringement occurred.

Contributory infringement arises only if one who received the component infringes a patent claim. The component must also have three characteristics.

1. the component must be a significant part of the invention;

2. the component must be especially made or adapted for use in a way that infringes at least one claim of one of the Mirror Worlds Patents, and the supplier must know that the component was especially made for that use; and

3. the component must not have a significant non-infringing use.

A component that has a number of non-infringing uses is often referred to as a staple or commodity article. Providing such a staple or commodity article is not contributory infringement even if the person receiving or buying the article uses it in an infringing way.

---

[37] Apple objects to this instruction in its entirety because Mirror Worlds' expert, Dr. Levy, failed to include any analysis regarding issues of indirect infringement, including infringement by inducement or contributory infringement in his expert report. In fact, Dr. Levy admitted that he was not asked to provide an opinion on indirect infringement, and did not do so. (See Docket No. 220 at 7-8, and supporting Declaration of Jeffrey G. Randall, Ex. 11 at 206:4-209:3, 210:8-15, 212:6-215:14; see esp. id. at 206:15-18 ("Q. Were you asked to provide an opinion regarding indirect infringement of any of the Mirror Worlds patents? A. No, not specifically.")). Further, Dr. Levy's report contains no discussion of the legal standards for indirect infringement. Id. at 214:10-215:14.  Moreover, Mirror Worlds Infringement Contentions fail to provide any substantive analysis of contributory infringement by Apple, and any presentation of new theories at trial would nothing less than ambush litigation.

Bundling an infringing feature with a noninfringing feature does not provide the infringing feature with a substantial noninfringing use.  For example, inclusion of an infringing software feature within a software package that has substantial noninfringing uses does not prevent the software feature from contributory infringement.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 3.12 (June 17, 2009), as modified by *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320-21 (Fed. Cir. 2009).

### 4.11   INFRINGEMENT BY SUPPLY OF ALL OR A SUBSTANTIAL PORTION OF THE COMPONENTS OF A PATENTED INVENTION TO ANOTHER COUNTRY 271(F)(1) (PLAINTIFF'S PROPOSED INSTRUCTION)[38]

Mirror Worlds asserts that Apple infringed the Mirror Worlds Patents by supplying all or a substantial portion of the components of the patented product and/or method from the United States to another country and actively inducing the assembly of those components into a product and/or use of the components in a method that would infringe the Mirror Worlds Patents if they had been assembled and/or used in the United States.

To show infringement under Section 271(f)(1), Mirror Worlds must prove that it is more likely than not that:

(1) the product or method, as it was intended to be assembled or used outside the United States, included or would have included all limitations of at least one of:

   a)   claims 13-17, 20 and 22 of the '227 Patent,

   b)   claims 1, 2, 5, 7-10, 13, 15-19, 22, 24-26, 29, 31-34, 37 and 39 of the '427 Patent,

   c)   claims 1-4 and 9-11 of the '313 Patent, and

   d)   claim 1 of the '999 Patent,

(2) Apple supplied or caused to be supplied components from the United States that made up all or a substantial portion of the invention of any one of:

   a)   claims 13-17, 20 and 22 of the '227 Patent,

   b)   claims 1, 2, 5, 7-10, 13, 15-19, 22, 24-26, 29, 31-34, 37 and 39 of the '427 Patent,

   c)   claims 1-4 and 9-11 of the '313 Patent, and

   d)   claim 1 of the '999 Patent, and

---

[38] Apple objects to this instruction in its entirety because Mirror Worlds' Complaint, Infringement Contentions, Interrogatory Responses and Initial Disclosures damages calculations do not include a claim for §271(f) infringement or foreign damages.  (*See* Docket No. 224, Statement of Undisputed Material Fact No. 2).

(3) Apple specifically intended to induce the combination of the components into a product and/or use of the components in a way that would infringe the Mirror Worlds Patents if the components had been combined in the United States.

[If this instruction is included Apple proposes: In order to find infringement under 271(f)(1), you must find that Apple "supplie[d] or cause[d] to be supplied in or from the United States all or a substantial portion of the components of a patented invention." You are instructed that software cannot be a component within the meaning of 271(f)(1) until it is expressed as a computer-readable copy, for example on a CD-ROM. Furthermore, you cannot find infringement under section 271(f)(1) where foreign-made copies of golden master versions of software are installed overseas on computers sold outside of the United States because these foreign-made copies were not supplied in or from the United States. Thus, if you find that Apple transmitted a "golden master" version of software abroad, either by shipping a disk or sending code via electronic transmission, and that foreign-made copies of the golden master software were subsequently installed on computers sold outside of the United States, you cannot find infringement under section 271(f)(1).][39]

AUTHORITY:  "AIPLA's Model Patent Jury Instructions," Am. Intellectual Prop. Law Ass'n Instruction 12.0 (Mar. 27 2008) § 3.8; 35 U.S.C. § 271(f)(1); *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454-55 (2007); *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002).

---

[39] Plaintiff objects to this addition as confusing for the jury and an inaccurate depiction of the law of 271(f)(1).

**5.      WILLFUL INFRINGEMENT**

**5.1     WILLFUL INFRINGEMENT**

In this case, Mirror Worlds contends that Apple willfully infringed the claims of the Mirror World Patents, and Apple contends that MWT willfully infringed the '101 patent.  If you find that Apple has infringed one or more valid claims of the '227, '313, '427, or '999 patents or that MWT has infringed one or more valid claims of the '101 patent, you must determine whether the infringement was willful.  Willful infringement must be proven by clear and convincing evidence, which is a higher burden of proof than for infringement.

[Plaintiff proposes: The issue of willful infringement relates to the amount of damages Mirror Worlds and/or Apple are entitled to recover in this lawsuit.][40]  If you decide that Apple willfully infringed one or more claims of the '227, '313, '427, or '999 patents or that MWT willfully infringed one or more claims of the '101 patent, then it is my job to decide whether or not to award increased damages.  You should not take this factor into account in assessing damages, if any, to be awarded to Mirror Worlds and/or Apple.

To prove willful infringement, Mirror Worlds must persuade you that it is highly probable that before March 14, 2008, Apple acted with reckless disregard of the claims of the '227, '313, '427, or '999 patents.  To prove willful infringement, Apple must persuade you that it is highly probable that before December 23, 2008, MWT acted with reckless disregard of the claims of the '101 patent.  "Reckless disregard" requires two parts:  the first concerns Apple and MWT's conduct, the second concerns the Apple and MWT's state of mind.

---

[40] Apple objects to this sentence as being prejudicial and unnecessary.  Plaintiff requests that this sentence remain in accordance with The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 4.1 (June 17, 2009).

When considering the alleged infringer's conduct, you must decide whether the patent holder has proven it is highly probable that the alleged infringer's conduct was reckless; that is, that the alleged infringer proceeded with the allegedly infringing conduct with knowledge of the patent, and in the face of an objectively high likelihood that they were infringing the claims of a valid and enforceable patent. Because this is an objective issue, the state of mind of the alleged infringer is not relevant to it. Legitimate or credible defenses to infringement, even if ultimately not successful, demonstrate a lack of recklessness. [Apple proposes: You may also take into consideration the Reexamination proceedings of the Mirror Worlds Patents and the inequitable conduct defenses asserted by Apple against Mirror Worlds.][41], [42]

---

[41] Apple understands that the Court's general preference is to have inequitable conduct heard outside the presence of the jury and to exclude reexamination proceedings from the jury. However, Apple respectfully requests that the Court consider Apple's position on inequitable conduct and reexamination in light of *In re Seagate*. Should the jury be tasked with determining willfulness – and instructed that "the alleged infringer proceeded . . . in the face of an objectively high likelihood that they were infringing the claims of a valid and ***enforceable*** patent" – then Apple should be permitted to have the jury hear information regarding enforceability of the patent. Thus, Apple respectfully proposes including this portion of the instruction should the court decide to have the jury make factual decisions on Willfulness. Inequitable Conduct is a valid defense to patent infringement. This legitimate and credible defense of unenforceability of the patent demonstrates that Apple's conduct was not reckless, and Apple did not proceed in the face of an objectively high likelihood that it was infringing the claims of an enforceable patent. Moreover, the rejection of all, or a significant portion, of the claims of the asserted patents during reexamination demonstrates the legitimacy and credibility of Apple's invalidity defense and should be considered by the jury in determining willfulness.

[42] Plaintiff objects to this sentence as being irrelevant and confusing to the jury. Plaintiff objects to this portion of the instruction that is not part of the model instruction as being irrelevant, confusing to the jury and likely to mislead the jury and prejudice Mirror Worlds. Reexamination is not probative evidence relevant to a jury's determination. i4i Ltd. Partnership v. Microsoft Corp., 670 F.Supp.2d 568, 583 (E.D.Tex. 2009) citing Procter & Gamble Co. v. Kraft Foods Global, Inc., 549 F.3d 842, 848 (Fed. Cir. 2008); Callaway Golf Co. v. Acushnet Co., 576 F.3d 1331, 1342-43 (Fed. Cir. 2009) (upholding the district court's refusal to allow the jury to hear evidence of parallel reexaminations). Moreover, inequitable conduct is an equitable defense for the trial court and not the jury and are also irrelevant with respect to defending a claim of willful infringement. i4i Ltd. Partnership, 670 F.Supp.2d at 582; Gardco Mfg. v. Herst Lighting Co., 820 F.2d 1209, 1212 (Fed. Cir. 1987). Agfa Corp. v. Creo Products, Inc., 451 F.3d 1366, 1373 (Fed. Cir. 2006).

If you conclude that the patent holder has proven that the alleged infringer's conduct was reckless, then you need to consider the second part of the test. You must determine whether the patent holder proved it is highly probable that the unjustifiably high risk of infringement was known or so obvious that it should have been known to the alleged infringer. In deciding whether the alleged infringer satisfied the state-of-mind part of the test, you should consider all facts surrounding the alleged infringement including, but not limited to, the following:

43. whether Apple or MWT acted in a manner consistent with the standards of commerce for its industry;

44. whether Apple or MWT intentionally copied without a reasonable basis a product or method of the patent holder covered by one or more claims of the patent, as distinguished from trying to "design around" the patent by designing a product or method that the alleged infringer believed did not infringe those claims; and

45. whether Apple or MWT had a reasonable basis to believe that it did not infringe or had a reasonable defense to infringement, such as that the patent was invalid.

AUTHORITY: The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 4.1 (June 17, 2009); 35 U.S.C. § 284; *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc) (standard for proving willfulness); *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314 (Fed. Cir. 2009); *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 Fed Appx. 284, 291 (Fed. Cir. 2008); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001) (burden of proof for willfulness); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354-55 (Fed. Cir. 1999).

## 6.    INVALIDITY

### 6.1    INVALIDITY-GENERALLY

Patent invalidity is a defense to patent infringement.  Even though the PTO examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

[Plaintiff proposes: The issuance of a patent by the U.S. Patent and Trademark Office provides a presumption that the patent is valid.  From the issuance of the patent, it is presumed that a claimed invention is "novel," "useful," "not obvious," and satisfies the other legal requirements for a valid U.S. patent.

This presumption of validity, however, is a rule of evidence that places the burden upon the party disputing the validity of a patent claim, to come up with clear and convincing evidence that the Patent Office acted erroneously in issuing the patent.

Each claim of a patent is presumed valid independently of the validity of the other claims.  Accordingly, the party challenging validity, bears the burden of proving invalidity of each claim with facts supported by clear and convincing evidence.[43]

The presumption of validity remains intact and the burden of proof remains on the party challenging validity, throughout this litigation.  In other words, the clear and convincing standard

---

[43] Apple objects to the instruction as failing to inform the jury that the burden may be more easily carried when prior art was not before the PTO. *See SIBIA Neurosciences, Inc. v. Cadus Pharmaceutical Corp.*, 225 F.3d 1349, 1355-56 (Fed. Cir. 2000) ("While the presentation at trial of a reference that was not before the examiner does not change the presumption of validity, the alleged infringer's burden may be more easily carried because of this additional reference."). *See also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426 (2007) (noting that "the rationale underlying the presumption [of validity]—that the PTO, in its expertise, has approved the claim—seems much diminished" where it rests on evidence the PTO has not considered). Apple further contends that the burden of proof where the PTO did not consider the prior art should be preponderance of the evidence, not clear and convincing evidence.

does not weaken, and the burden of proof never shifts to the patent owner to prove that its patents are valid.][44]

    I will now instruct you on the invalidity issues you should consider.  As you consider these issues, remember that the alleged infringers bear the burden of proving that it is highly probable that the claims are invalid [Apple proposes: or more probable than not that the claims are invalid when the alleged infringer asserts prior art not considered by the Patent Office].[45], [46]

---

[44] Apple objects to this instruction as cumulative and confusing. The presumption is not evidence and has no substantive impact on the ultimate question of whether a patent is invalid. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004) (rejecting argument that district court erred by refusing to instruct on presumption of validity); *Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed. Cir. 1991); see also Fed. R. Evid. 301, Committee on the Judiciary's Note, S. Rep. No. 93-1277 (1974) (informing jury about a presumption, as if it were evidence, "may confuse them in performance of their duties") (emphasis added); see also Nat'l Jury Instr. Project, Model Patent Jury Instructions at 33 (June 17, 2009) ("In light of the procedural role of the presumption of validity, instructing the jury on the presumption in addition to informing it of the highly probable burden of proof may cause jury confusion as to its role in deciding invalidity.").

[45] Apple proposes this instruction to inform the jury that the burden may be more easily carried when prior art was not before the PTO. See *SIBIA Neurosciences, Inc. v. Cadus Pharmaceutical Corp.*, 225 F.3d 1349, 1355-56 (Fed. Cir. 2000) ("While the presentation at trial of a reference that was not before the examiner does not change the presumption of validity, the alleged infringer's burden may be more easily carried because of this additional reference."). See also *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426 (2007) (noting that "the rationale underlying the presumption [of validity]—that the PTO, in its expertise, has approved the claim—seems much diminished" where it rests on evidence the PTO has not considered). Apple further contends that the burden of proof where the PTO did not consider the prior art should be preponderance of the evidence, not clear and convincing evidence.

[46] Plaintiff objects to this addition as misstating the proper burden of proof.  i4i Ltd. P'ship v. Microsoft Corp., 670 F.Supp.2d 568, 588 (E.D. Tex. 2009) (Davis, J.) (rejecting challenger's proposed preponderance of the evidence jury instruction, finding that "KSR did not specifically hold that the clear and convincing standard was inapplicable when the PTO did not consider the particularly relevant prior art" and holding that the "law remains overwhelmingly that patents are to be presumed valid and it is the defendant's burden to prove invalidity by clear and convincing evidence");  Z4 Tech., Inc. v. Microsoft Corp., 507 F.3d 1340, 1354-55 (Fed. Cir. 2007) (holding that a challenger's burden of proof in establishing invalidity is not more easily carried when the art relied upon was not before the PTO; rather, the clear and convincing standard remains unchanged and a district court does not abuse its discretion by refusing to provide an instruction that would lessen the challenger's burden);  Uniroyal, Inc. v. Rudkin-Wiley Corp., 837 F.2d

-67-

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 5.1 (June 17, 2009);  [Plaintiff proposes:  Federal Jury Practice and Instructions § 158.44; *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348 (Fed. Cir. 2007) (no shift or change in the burden of proof).]

---

1044, 1050 (Fed. Cir. 1988) (finding a patent's presumption of validity "may be rebutted only by clear and convincing evidence" and such "burden of proof is not reduced when prior art is presented to the court which was not considered by the PTO");  Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp., 739 F.2d 604, 615 (Fed. Cir. 1984) ("this court has repeatedly held that the party asserting invalidity must prove facts capable of overcoming the presumption [of validity] by clear and convincing evidence" and the "introduction of prior art not considered by the PTO does not change the burden of proof or the requirement that evidence establish the presumption-defeating facts clearly and convincingly"), abrogated on other grounds by Markman, 52 F.3d 96;  American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1360 (Fed. Cir. 1984) (holding the fact that prior art or other evidence was not considered in the PTO "has no effect on the presumption or on who has the burden of proof" and "[n]either does the standard of proof change; it must be by clear and convincing evidence or its equivalent, by whatever form of words it may be expressed");  Connell v. Sears, Roebuck & Co., 722 F.2d 1542, 1549 (Fed. Cir. 1983) (holding that "the introduction of art or other evidence not considered by the PTO does not change the [challenger's burden of proof of invalidity] and does not change the requirement that the evidence establish presumption-defeating facts clearly and convincingly").

-68-

### 6.2    INVALIDITY - PATENT CLAIMS TO BE CONSIDERED SEPARATELY (PLAINTIFF'S PROPOSED INSTRUCTION)[47]

In making your determination as to whether a patent claim is valid or invalid, you must consider each patent and each of the claims of a patent and separately and individually, as you did when you considered whether the claim was infringed or not.  If the evidence is clear and convincing that a claim in a given patent fails to meet the essential requirements of the patent laws, then that patent claim is invalid.  [Apple proposes:[48] Additionally, as I will explain in the next instruction, a claim may also be found invalid by the preponderance of the evidence when the party asserting invalidity uses prior art not considered by the Patent Office during the original review of the patent application.][49], [50]  However, if you find that one or more claims of a patent

---

[47] Apple objects to this instruction in its entirety as it is unnecessary in light of the lengthy instructions proposed by the parties.  Plaintiff deems this instruction necessary in light of the numerous patents and the fact that not all patents are owned by the same party.

[48] Plaintiff objects to this sentence as being confusing to the jury.

[49] *SIBIA Neurosciences, Inc. v. Cadus Pharmaceutical Corp.*, 225 F.3d 1349, 1355-56 (Fed. Cir. 2000) ("While the presentation at trial of a reference that was not before the examiner does not change the presumption of validity, the alleged infringer's burden may be more easily carried because of this additional reference."). See also *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426 (2007) (noting that "the rationale underlying the presumption [of validity]—that the PTO, in its expertise, has approved the claim—seems much diminished" where it rests on evidence the PTO has not considered); *Baumstimler v. Rankin*, 677 F.2d 1061, 1065-1066 (5th Cir. 1982) (presumption of validity weakened when prior art has not previously been considered by PTO); *Mfg. Research Corp. v. Graybar Elec. Co.*, 679 F.2d 1355, 1363 (11th Cir. 1982) ("[T]he presumption of validity that attaches to an issued patent is seriously eroded when relevant prior art was not before the Patent Office."); *Futorian Mfg. Corp. v. Dual Mfg. & Eng'g, Inc.*, 528 F.2d 941, 943 (1st Cir. 1976) ("[T]o the extent patent office attention has not been directed to relevant instances of prior art the presumption of validity arising from the issuance of a patent is eroded."); *U.S. Expansion Bolt Co. v. Jordan Indus., Inc.*, 488 F.2d 566, 569 (3d Cir. 1973) (presumption of validity weakened because prior art not previously considered by PTO); *Preformed Line Prods. Co. v. Fanner Mfg.Co.*, 328 F.2d 265, 271 (6th Cir. 1964) (presumption of validity is weakened if applicable prior art is not considered by Patent Office); *Cont'l Can Co. v. Old Dominion Box Co.*, 393 F.2d 321, 326 n.8 (2nd Cir. 1968) ("The presumption of validity attaching to issued patents is substantially weakened by the failure of the Patent Office to consider important prior art. . . ."); *Marston v. J.C. Penney Co.*, 353 F.2d 976, 982 (4th Cir. 1965) (presumption of validity conversely is "weakened or destroyed" where relevant art was not cited or considered by PTO); *Ralston Purina Co. v. Gen. Foods Corp.*, 442 F.2d 389, 390 (8th

Cir. 1971) ("The presumption of validity normally afforded to a patent is weakened, if not completely destroyed, by proof of pertinent prior non-considered art."); *Jaybee Mfg. Corp. v. Ajax Hardware Mfg. Corp.*, 287 F.2d 228, 229 (9th Cir. 1961) ("[E]ven one prior art reference which has not been considered by the Patent Office may overthrow this presumption."); *Turzillo v. P. & Z. Mergentime*, 532 F.2d 1393, 1399 (D.C. Cir. 1976) ("The statutory presumption of validity does not apply to prior art not cited to the Patent Office, and even one prior art reference not cited to the examiner overcomes the presumption."); *Henry Mfg. Co. v. Commercial Filters Corp.*, 489 F.2d 1008, 1013 (7th Cir. 1972) (presumption of validity "does not exist against evidence of prior art not before the Patent Office" and "[e]ven one prior art reference not considered by the Patent Office can suffice to overthrow the presumption."); *Plastic Container Corp. v. Cont'l Plastics of Okla., Inc.*, 708 F.2d 1554, 1558 (10th Cir. 1983) (bases for presumption of validity "vanishes" if the PTO failed to consider relevant prior art).

But see *z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1355 (Fed. Cir. 2007) ("The introduction of prior art not considered by the PTO does not change the burden of proof or the requirement that evidence establish the presumption-defeating facts clearly and convincingly."), quoting *Bio-Rad Lab. v. Nicolet Instrument Corp.*, 739 F.2d 604, 615 (Fed. Cir. 1984).

[50] Plaintiff objects to this addition as misstating the proper burden of proof. i4i Ltd. P'ship v. Microsoft Corp., 670 F.Supp.2d 568, 588 (E.D. Tex. 2009) (Davis, J.) (rejecting challenger's proposed preponderance of the evidence jury instruction, finding that "KSR did not specifically hold that the clear and convincing standard was inapplicable when the PTO did not consider the particularly relevant prior art" and holding that the "law remains overwhelmingly that patents are to be presumed valid and it is the defendant's burden to prove invalidity by clear and convincing evidence"); Z4 Tech., Inc. v. Microsoft Corp., 507 F.3d 1340, 1354-55 (Fed. Cir. 2007) (holding that a challenger's burden of proof in establishing invalidity is not more easily carried when the art relied upon was not before the PTO; rather, the clear and convincing standard remains unchanged and a district court does not abuse its discretion by refusing to provide an instruction that would lessen the challenger's burden); Uniroyal, Inc. v. Rudkin-Wiley Corp., 837 F.2d 1044, 1050 (Fed. Cir. 1988) (finding a patent's presumption of validity "may be rebutted only by clear and convincing evidence" and such "burden of proof is not reduced when prior art is presented to the court which was not considered by the PTO"); Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp., 739 F.2d 604, 615 (Fed. Cir. 1984) ("this court has repeatedly held that the party asserting invalidity must prove facts capable of overcoming the presumption [of validity] by clear and convincing evidence" and the "introduction of prior art not considered by the PTO does not change the burden of proof or the requirement that evidence establish the presumption-defeating facts clearly and convincingly"), abrogated on other grounds by Markman, 52 F.3d 96; American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1360 (Fed. Cir. 1984) (holding the fact that prior art or other evidence was not considered in the PTO "has no effect on the presumption or on who has the burden of proof" and "[n]either does the standard of proof change; it must be by clear and convincing evidence or its equivalent, by whatever form of words it may be expressed"); Connell v. Sears, Roebuck & Co., 722 F.2d 1542, 1549 (Fed. Cir. 1983) (holding that "the introduction of art or other evidence not considered by the PTO does not change the [challenger's burden of proof of invalidity] and does not change the requirement that the evidence establish presumption-defeating facts clearly and convincingly").

-70-

fail to meet the essential requirements of the patent laws, it does not necessarily mean that the remaining claims of that patent are also deficient or invalid.

Likewise, if you find that one or more claims of one patent is invalid, that does not necessarily mean that any claim of any other patent is similarly invalid.

AUTHORITY:  Federal Jury Practice and Instructions §158.26.

### 6.3    ANTICIPATION—PUBLICLY USED OR KNOWN, OR PREVIOUSLY PUBLISHED

Apple contends that the asserted claims of the Mirror Worlds Patents are invalid because the claimed invention is not new.  Similarly MWT contends that claims 1-12 of the Apple Patent are invalid because the claimed invention is not new. For a claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention. In patent law, such previous device, method, publication or patent is called a "prior art reference." If a patent claim is not new we say it is "anticipated" by a prior art reference.

The party asserting invalidity must [Apple proposes : generally] prove that it is highly probable that the claim was anticipated. [Apple proposes: However, the burden for proving invalidity may be more easily carried when the prior art used to argue invalidity was not before the Patent Office when it originally decided whether to grant the patent.[51]  Where the prior art was not before the Patent Office, the burden of proof is preponderance of the evidence.][52]

---

[51] SIBIA Neurosciences, Inc. v. Cadus Pharmaceutical Corp., 225 F.3d 1349, 1355-56 (Fed. Cir. 2000) ("While the presentation at trial of a reference that was not before the examiner does not change the presumption of validity, the alleged infringer's burden may be more easily carried because of this additional reference."). See also KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 426 (2007) (noting that "the rationale underlying the presumption [of validity]—that the PTO, in its expertise, has approved the claim—seems much diminished" where it rests on evidence the PTO has not considered; Baumstimler v. Rankin, 677 F.2d 1061, 1065-1066 (5th Cir. 1982) (presumption of validity weakened when prior art has not previously been considered by PTO); Mfg. Research Corp. v. Graybar Elec. Co., 679 F.2d 1355, 1363 (11th Cir. 1982) ("[T]he presumption of validity that attaches to an issued patent is seriously eroded when relevant prior art was not before the Patent Office."); Futorian Mfg. Corp. v. Dual Mfg. & Eng'g, Inc., 528 F.2d 941, 943 (1st Cir. 1976) ("[T]o the extent patent office attention has not been directed to relevant instances of prior art the presumption of validity arising from the issuance of a patent is

CRITICAL

eroded."); U.S. Expansion Bolt Co. v. Jordan Indus., Inc., 488 F.2d 566, 569 (3d Cir. 1973) (presumption of validity weakened because prior art not previously considered by PTO); Preformed Line Prods. Co. v. Fanner Mfg.Co., 328 F.2d 265, 271 (6th Cir. 1964) (presumption of validity is weakened if applicable prior art is not considered by Patent Office); Cont'l Can Co. v. Old Dominion Box Co., 393 F.2d 321, 326 n.8 (2nd Cir. 1968) ("The presumption of validity attaching to issued patents is substantially weakened by the failure of the Patent Office to consider important prior art. . . ."); Marston v. J.C. Penney Co., 353 F.2d 976, 982 (4th Cir. 1965) (presumption of validity conversely is "weakened or destroyed" where relevant art was not cited or considered by PTO); Ralston Purina Co. v. Gen. Foods Corp., 442 F.2d 389, 390 (8th Cir. 1971) ("The presumption of validity normally afforded to a patent is weakened, if not completely destroyed, by proof of pertinent prior non-considered art."); Jaybee Mfg. Corp. v. Ajax Hardware Mfg. Corp., 287 F.2d 228, 229 (9th Cir. 1961) ("[E]ven one prior art reference which has not been considered by the Patent Office may overthrow this presumption."); Turzillo v. P. & Z. Mergentime, 532 F.2d 1393, 1399 (D.C. Cir. 1976) ("The statutory presumption of validity does not apply to prior art not cited to the Patent Office, and even one prior art reference not cited to the examiner overcomes the presumption."); Henry Mfg. Co. v. Commercial Filters Corp., 489 F.2d 1008, 1013 (7th Cir. 1972) (presumption of validity "does not exist against evidence of prior art not before the Patent Office" and "[e]ven one prior art reference not considered by the Patent Office can suffice to overthrow the presumption."); Plastic Container Corp. v. Cont'l Plastics of Okla., Inc., 708 F.2d 1554, 1558 (10th Cir. 1983) (bases for presumption of validity "vanishes" if the PTO failed to consider relevant prior art).

[52] Plaintiff objects to this addition as misstating the proper burden of proof.  i4i Ltd. P'ship v. Microsoft Corp., 670 F.Supp.2d 568, 588 (E.D. Tex. 2009) (Davis, J.) (rejecting challenger's proposed preponderance of the evidence jury instruction, finding that "KSR did not specifically hold that the clear and convincing standard was inapplicable when the PTO did not consider the particularly relevant prior art" and holding that the "law remains overwhelmingly that patents are to be presumed valid and it is the defendant's burden to prove invalidity by clear and convincing evidence");  Z4 Tech., Inc. v. Microsoft Corp., 507 F.3d 1340, 1354-55 (Fed. Cir. 2007) (holding that a challenger's burden of proof in establishing invalidity is not more easily carried when the art relied upon was not before the PTO; rather, the clear and convincing standard remains unchanged and a district court does not abuse its discretion by refusing to provide an instruction that would lessen the challenger's burden);  Uniroyal, Inc. v. Rudkin-Wiley Corp., 837 F.2d 1044, 1050 (Fed. Cir. 1988) (finding a patent's presumption of validity "may be rebutted only by clear and convincing evidence" and such "burden of proof is not reduced when prior art is presented to the court which was not considered by the PTO");  Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp., 739 F.2d 604, 615 (Fed. Cir. 1984) ("this court has repeatedly held that the party asserting invalidity must prove facts capable of overcoming the presumption [of validity] by clear and convincing evidence" and the "introduction of prior art not considered by the PTO does not change the burden of proof or the requirement that evidence establish the presumption-defeating facts clearly and convincingly"), abrogated on other grounds by Markman, 52 F.3d 96;  American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1360 (Fed. Cir. 1984) (holding the fact that prior art or other evidence was not considered in the PTO "has no effect on the presumption or on who has the burden of proof" and "[n]either does the standard of proof change; it must be by clear and convincing evidence or its equivalent, by whatever form of words it may be expressed");  Connell v. Sears, Roebuck & Co., 722 F.2d

The disclosure in the prior art reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of computers looking at that one reference would be able to make and use at least one embodiment of the claimed invention.

Anticipation also occurs when the claimed invention inherently (necessarily) results from practice of what is disclosed in the written reference, even if the inherent disclosure was unrecognized or unappreciated by one of ordinary skill in the field of the invention.

Generally, an alleged infringer can show that a patent holder's patent claim was not new:

- if the claimed invention was already publicly known or publicly used by others in the United States before the date of invention;

- if the claimed invention was already patented or described in a printed publication anywhere in the world before the date of invention.  To qualify as a prior art reference, a "printed publication" must be at least reasonably accessible to those interested in the field, even if it is difficult to find.  An electronic publication, including an on-line or internet publication is a "printed publication" if at least reasonably accessible to those interested in the field even if it is difficult to find; or

- if the claimed invention was already described in another published U.S. patent application or issued U.S. patent that was based on a patent application filed before the date of invention of the asserted patent.

If a patent claim is not new as explained above, you must find that claim invalid.

---

1542, 1549 (Fed. Cir. 1983) (holding that "the introduction of art or other evidence not considered by the PTO does not change the [challenger's burden of proof of invalidity] and does not change the requirement that the evidence establish presumption-defeating facts clearly and convincingly").

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 5.5 (June 17, 2009); The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction B.4.3.a (February 18, 2010); 35 U.S.C.  §102(a), (c), (e), (f) and (g); *Ecolochem, Inc. v. S.  Cal.  Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Am. Stock Exch., LLC v. Mopex, Inc.,* 250 F. Supp. 2d 323 (S.D.N.Y. 2003); *In re Lister*, 583 F.3d 1307, 1312 (Fed. Cir. 2009); *In re Wyer,* 655 F.2d 221, 222 (CCPA 1981); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *E. I. du Pont de Nemours & Co. v. Cetus Corp.,* No. C 89-2860 MHP, 1990, U.S. Dist. LEXIS 18382 (N.D. Cal. Dec. 11, 1990).

**6.4      ANTICIPATION—STATUTORY BARS**

Each alleged infringer may prove that the patents-in-suit are invalid by showing that it is highly probable that each such claim failed to meet one of several statutory provisions in the patent laws.  These provisions are called "statutory bars." For a patent claim to be invalid because of a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the effective filing date of the patent application.

Here is a list of ways a party asserting invalidity can show that the patent application was not timely filed, that is, filed within one year of the occurrence of any of the following events:

- if the claimed invention was already patented or described in a printed publication anywhere in the world more than one year before the effective filing date of the patent application.  A reference is a "printed publication" if it is reasonably accessible to those interested in the field, even if it is difficult to find.  An electronic publication, including an on-line or internet publication, is a "printed publication" if it is at least reasonably accessible to those interested in the field, even if it is difficult to find.  [Plaintiff Proposes:  A document is reasonably accessible if it is indexed and catalogued in a meaningful way so that it can be found by way of a reasonable search];[53] or

- if the claimed invention was already being publicly or commercially used in the

---

[53] Apple objects to this sentence as unnecessary, outside the The Nation Jury Instruction Project, Model Patent Jury Instruction No. 5.7 (June 17, 2009), and a misleading incomplete statement of the law.  *See In re Lister*, 583 F.3d 1307 (Fed. Cir. 2009)("While cataloging and indexing have played a significant role in our cases involving library references, we have explained that neither cataloging nor indexing is a necessary condition for a reference to be publicly accessible"; The relevant inquiry is "whether [the document] could be located by 'persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence.'"); see also *In re Klopfenstein*, 380 F.3d 1345, 1348 -1350  (Fed. Cir. 2004) ("[Our cases] do not limit this court to finding something to be a 'printed publication' only when there is distribution and/or indexing")

United States before one year before the effective filing date of the patent application and that use was not primarily an experimental use controlled by the inventor to test whether the invention worked for its intended purpose.

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference or (2) implicitly disclosed in a single prior art reference as viewed by one of ordinary skill in the field of the invention. The disclosure in a reference does not have to be in the same words as the claim, but all of the requirements of the claim must be described in enough detail, or necessarily implied by or inherent in the reference, to enable someone of ordinary skill in the field of the invention looking at the reference to make and use at least one embodiment of the claimed invention.

A prior art reference also invalidates a patent claim when the claimed invention necessarily results from practice of the subject of the prior art reference, even if the result was unrecognized and unappreciated by one of ordinary skill in the field of the invention.

[Plaintiff proposes: MWT contends that the claims 1-12 of the Apple Patent are anticipated.  MWT contends that claims 1-12 of the '101 Patent were described in the article titled Spatial Data Management, also referred to as the SDM article, by Richard A. Bolt, published in 1979 by the Massachusetts Institute of Technology.][54]

If you find a patent claim failed to meet a statutory bar, you must find the patent claim invalid.

---

[54] Apple objects to listing out the invalidity contentions in the instructions as unnecessary in light of the lengthy instructions proposed by the parties.  Should the Court allow MWT to list asserted prior art references, Apple requests the same opportunity to list the prior art asserted against the Mirror Worlds patents.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 5.7 (June 17, 2009); 35 U.S.C. §102(b) and (d); *Pfaff v. Wells Elec.  Inc.*, 525 U.S. 55 (1998); *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373 (Fed. Cir. 2003) [Plaintiff proposes: as modified by *In re Lister*, 583 F.3d 1307, 1312 (Fed. Cir. 20090;  *In re Bayer*, 568 F.2d 1357, 1361 (CCPA 1978).

**6.5     OBVIOUSNESS**

In this case, Apple claims that the asserted claims of the Mirror Worlds Patents are invalid as obvious. Similarly MWT claims that the asserted claims of the Apple Patent are invalid as being obvious.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field of the invention at the time the patent application was filed.  This means that even if all the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of the invention who knew about all of the prior art would have come up with the claimed invention.

A patent claim composed of several requirements is not proved obvious merely by demonstrating that each of its requirements was independently known in the prior art.  Although common sense directs one to look with care at a patent application that claims as innovation the combination of known requirements according to their established functions to produce a predictable result, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the requirements in the way the claimed new invention does.  This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.  Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention although proof of this is not a requirement to prove obviousness.  Teachings, suggestions, and motivations may be found in written references including the prior art itself. However, teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of

ordinary skill in the art would employ.  Additionally, teachings, suggestions, and motivations may be found in the nature of the problem solved by the claimed invention, or any need or problem known in the field of the invention at the time of and addressed by the invention.

Therefore, in evaluating whether such a claim would have been obvious, you should consider a variety of factors:

1.      Whether the alleged infringer has identified a reason that would have prompted a person of ordinary skill in the field of the invention to combine the requirements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.

2.      Whether the claimed invention applies a known technique that had been used to improve a similar device or method in a similar way.

3.      Whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.

But you must be careful not to determine obviousness using hindsight; many true inventions can seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

The ultimate conclusion of whether a claim is obvious should be based on your determination of several factual issues:

1.      You must decide the level of ordinary skill in the field of the invention that someone would have had at the time the claimed invention was made.

2.      You must decide the scope and content of the prior art.  In determining the scope and content of the prior art, you must decide whether a reference is pertinent, or analogous, to the claimed invention.  Pertinent, or analogous, prior art includes prior art in the same field of endeavor as the claimed invention, regardless of the problems addressed by the reference, and prior art from different fields reasonably pertinent to the particular problem with which the claimed invention is concerned.  Remember that prior art is not limited to patents and published materials, but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

3.      You must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

A.      Factors tending to show non-obviousness include:

1.      commercial success of a product due to the merits of the claimed invention;

2.      a long-felt, but unsolved, need for the solution provided by the claimed invention;

3.      unsuccessful attempts by others to find the solution provided by the claimed invention;

-81-

4.      copying of the claimed invention by others.

5.      unexpected and superior results from the claimed invention;

6.      acceptance by others of the claimed invention as shown by praise from others in the field of the invention or from the licensing of the claimed invention; and

7.      disclosures in the prior art that criticize, discredit, or otherwise discourage the claimed invention and would therefore tend to show that the invention was not obvious.

B.      Factors tending to show obviousness include:

1.      independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it.

You may consider the presence of any of the factors A. 1-7 as an indication that the claimed invention would not have been obvious at the time the claimed invention was made. And you may consider the presence of the factor B. 1 as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

The alleged infringer must prove that it is highly probable that a claimed invention was obvious.  If you find that a claimed invention was obvious as explained above, you must find that claim invalid.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 5.9 (June 17, 2009); 35 U.S.C. §103 (a); *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 420-426 (2007); *Graham v. John Deere Co.*, 383 U.S. 1 (1966).

### 6.6      THE SCOPE AND CONTENT OF PRIOR ART

To qualify as prior art relevant to the patents-in-suit, a reference must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.  Remember that prior art is not limited to patents and published materials, but also includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 5.11 (June 17, 2009); *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Int'l v. Teleflex, Inc.*, 550 U.S. 398, 417 (2007); *Ruiz v. A.B.  Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Wang Labs. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993).

**6.7      DIFFERENCES OVER THE PRIOR ART**

In reaching your conclusion about whether or not claims the patents-in-suit would have

been obvious at the time the claimed invention was made, you should consider any difference or

differences between the prior art and the claimed requirements.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 5.12 (June 17, 2009); *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007); *Graham v. John Deere Co.*, 383 U.S. 1 (1966).

**6.8     LEVEL OF ORDINARY SKILL**

Several times in my instructions I have referred to a person of ordinary skill in the field of the invention.  It is up to you to decide the level of ordinary skill in the field of the invention. You should consider all of the evidence introduced at trial in making this decision, including:

1.      the levels of education and experience of persons working in the field;

2.      the types of problems encountered in the field; and

3.      the sophistication of the technology.

[Plaintiff proposes: Mirror Worlds contends that the level of ordinary skill in the field of invention was someone who had a bachelor's degree in computer science, computer engineering or the equivalent, and 3-5 years of experience in the field of computer operating systems, or a post-graduate degree in computer science, computer engineering or the equivalent, and 1-2 years of experience in the field of computer operating systems.

Apple contends that the level of ordinary skill in the field of the invention was someone who had a PhD in computer science or some combination of education and experience that provided sufficient competence in the appropriate aspects of computer science, such as graphical user interface design, and some knowledge of document processing, software design and development, data structures, operating systems, backup and archiving systems, and client-server computing.][55]

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 5.13 (June 17, 2009); *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007); *Graham v. John Deere Co.*, 383 U.S. 1 (1966).

---

[55] Apple objects to this instruction as it is unnecessary in light of the lengthy instructions proposed by the parties.  Plaintiff deems this instruction necessary as long as the parties dispute the level of ordinary skill in the art.

### 6.9    IMPROPER INVENTORSHIP (DEFENDANT'S PROPOSED INSTRUCTION)[56]

In this case, Apple contends that the claims of the '999 patent are invalid because of improper inventorship.  To prove invalidity because of improper inventorship, Apple must show that it is highly probable that the patent fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent.  This is known as the "inventorship" requirement.  In determining whether the inventorship requirement has been satisfied here, you should be guided by the following principles.

To be an inventor, one must make a significant contribution to the conception of one or more of the claims of the patent.  Whether the contribution is significant is measured against the scope of the full invention.

Conception is the mental formulation and disclosure by the inventor(s) of a complete idea of the inventive solution.  An inventive solution is considered to be a complete idea when disclosure of the idea would enable anyone with ordinary skill in the pertinent art to reduce the invention to practice.

Persons may be inventors even if they do not physically work together, make the same type or amount of contribution, or contribute to the subject matter of every claim of the patent.  While persons may be joint or co-inventors even though they do not physically work together, they must have some open line of communication during or at approximately the time of their inventive effort.

---

[56] Plaintiff objects to this instruction as inventorship is a question for the Court and not the jury. *Vanderbilt Unv. V. ICOS Corp.*, 601 F.3d 1297, 1302-03 (Fed. Cir. 2010) (affirming the district court's bench trial rejection of a challenge to inventorship and finding "Inventorship is a question of law…."); *see also Caterpillar Inc. v. Sturman Inds., Inc.*, 387 F.3d 1358, 1365 (Fed. Cir. 2005) (reviewing and affirming district court's holding after bench trial on inventorship); *Impax Labs. v. Aventis Pharmaceuticals, Inc.*, 468 F.3d 1366, 1373 (Fed. Cir. 2006).

Explaining to the actual inventors well-known concepts or the current state of the art does not make someone an inventor.  Likewise, merely helping with experimentation, by carrying out the inventor's instructions, does not make someone an inventor.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 5.8 (June 17, 2009); 35 U.S.C. §§102(f), 256; *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed. Cir. 1998); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358-59 (Fed. Cir. 2004); *Hess v. Advanced Cardiovascular Sys.  Inc.*, 106 F.3d 976, 980-81 (Fed. Cir. 1997); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994); *Slip Track Sys., Inc. v. Metal-Lite, Inc.,* 304 F.3d 1256, 1262-63 (Fed. Cir. 2002); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985).

.

### 6.10    WRITTEN DESCRIPTION (DEFENDANT'S PROPOSED INSTRUCTION)[57]

Apple contends that claims 13-17, 20, and 22 of the '227 Patent; claims 1, 2, 5, 7-10, 13, 15-19, 22, 24-26, 29, 31-34, 37 and 39 of the '427 Patent claims 1-4 and 9-11 of the '313 Patent; and claim 1 of the '999 Patent are invalid for failure of the patent to provide an adequate written description of the claimed invention.  Apple must prove that it is highly probable these claims lacked an adequate written description.

The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would recognize that the patent application described the invention of these claims, even though the description might not use the exact words found in the claim.  The written description is adequate if it shows that the inventor was in possession of each claim of the invention at the time the application for the patent was filed, even though the claim may have been changed or new claims added during the prosecution of the application.  It is not necessary that each and every aspect of the claim be explicitly discussed, as long as a person of ordinary skill would understand that any aspect not expressly discussed is implicit in the patent application as originally filed.  If you find that one or more of the claims challenged by Apple lacked an adequate written description, you must find each such claim invalid.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 5.2 (June 17, 2009); 35 U.S.C. § 112, ¶ 1; *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) (en banc).

---

[57] Mirror Worlds objects to the inclusion of this instruction to the extent that Apple's expert has not rendered an opinion on written description.

### 6.11   ENABLEMENT (DEFENDANT'S PROPOSED INSTRUCTION)[58]

Apple contends that claims 13-17, 20, and 22 of the '227 Patent; claims 1, 2, 5, 7-10, 13, 15-19, 22, 24-26, 29, 31-34, 37 and 39 of the '427 Patent claims 1-4 and 9-11 of the '313 Patent; and claim 1 of the '999 Patent are invalid because the patents do not disclose sufficient information to enable one skilled in the field of the invention, at the time the application was filed (or its effective filing date), to make and use the claimed invention. This requirement is known as the enablement requirement. If a patent claim is not enabled, it is invalid. Each claim must be analyzed for compliance with the enablement requirement. Apple must prove that it is highly probable that the claim was not enabled.

In considering whether a patent claim satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain. Apple bears the burden of establishing lack of enablement by showing that it is highly probable that a person skilled in the art, upon reading the patent document, would not be able to make the invention work without undue experimentation. The fact that some experimentation may be required for a skilled person to make or use the claimed invention does not mean that a patent's written description fails to meet the enablement requirement. Factors you may consider in determining whether making the invention would require undue experimentation include:

1. the quantity of experimentation necessary;

2. the amount of direction or guidance disclosed in the patent;

---

[58] Mirror Worlds objects to the inclusion of this instruction to the extent that Apple's expert has not rendered an opinion on enablement.

3. the presence or absence of working examples in the patent;

4. the nature of the invention;

5. the state of the prior art;

6. the relative skill of those in the art;

7. the predictability of the art; and

8. the breadth of the claims.

If you find that one or more of these claims did not comply with the enablement requirement, you must find each such claim invalid.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 5.3 (June 17, 2009); 35 U.S.C. § 112; AK *Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003); *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001); *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer-Daniels Midland Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-98 (Fed. Cir. 1999); *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1371 (Fed. Cir. 1999); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988); *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533 (Fed. Cir. 1987); *White Consol. Indus., Inc. v. Vega Servo Control, Inc.*, 713 F.2d 788, 791 (Fed. Cir. 1983).

7.    **EQUITABLE DEFENSES**

   **7.1    INEQUITABLE CONDUCT (DEFENDANT'S PROPOSED INSTRUCTION)[59], [60]**

Every applicant for a patent has a duty of candor and good faith in its dealing with the United States Patent and Trademark Office.  This is important because the PTO has limited resources. When a person involved in the prosecution of an application fails to supply material information or supplies false information or statements and does so with an intent to deceive the PTO, he or she may commit what is called "inequitable conduct."  When inequitable conduct occurs during the examination of an application, any patent that issues from that application is unenforceable as a matter of fairness.  This means that despite the existence and validity of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.

---

[59] Plaintiff objects to this instruction as Inequitable Conduct is a question for the Court and not the jury.  *Foster v. Hallco Mfg. Co.*, 947 F.2d 469 (Fed. Cir. 1991); The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 5.2 (June 17, 2009) 2.1 Committee Notes.
[60] Apple understands that the Court's general preference is to have inequitable conduct heard outside the presence of the jury and to exclude reexamination proceedings from the jury. However, Apple respectfully requests that the Court consider Apple's position on inequitable conduct and reexamination in light of *In re Seagate*.  Should the jury be tasked with determining willfulness – and instructed that "the alleged infringer proceeded  . . . in the face of an objectively high likelihood that they were infringing the claims of a valid and *enforceable* patent" – then Apple should be permitted to have the jury hear information regarding enforceability of the patent.  Thus, Apple respectfully proposes including this portion of the instruction should the court decide to have the jury make factual decisions on Willfulness. Inequitable Conduct is a valid defense to patent infringement.  This legitimate and credible defense of unenforceability of the patent demonstrates that Apple's conduct was not reckless, and Apple did not proceed in the face of an objectively high likelihood that it was infringing the claims of an enforceable patent.  Moreover, the rejection of all, or a significant portion, of the claims of the asserted patents during reexamination demonstrates the legitimacy and credibility of Apple's invalidity defense and should be considered by the jury in determining willfulness. Plaintiff objects to this sentence as being irrelevant and confusing to the jury.

Because a finding of inequitable conduct completely extinguishes a patent holder's right to prevent others from using an invention, Apple must prove by clear and convincing evidence both that a person meaningfully involved in the prosecution of the patents-in-suit withheld material information or submitted materially false information or statements to the PTO during the examination of the patents-in suit, and that the person did so with an intent to deceive the Examiner into issuing the patents-in-suit.

I will now explain to you what "material" and "intent to deceive" mean.

**Material**

Information or statements are material if they establish, either alone or in combination with other information or statements, that the invention sought to be patented more likely than not failed to satisfy a requirement for a valid patent.  Examples of such requirements would include that the disclosure must be enabling and contain an adequate written description, and that the invention must be new and nonobvious, among others.  Information or statements also are material if they refute or are inconsistent with a position that the applicant for a patent took when opposing an argument made by the Examiner that the invention was not patentable or when making an argument to the Examiner that the invention was patentable.  Information or statements are also material if there is a substantial likelihood that a reasonable Examiner would consider them important in deciding whether to allow the application to issue as a patent.  False information or statements may be considered material if they would (alone or in combination) falsely suggest that the applicant satisfied a patentability requirement.  Withheld information that is cumulative of, or less relevant to any patentability requirement compared to information the examiner already had from any source, is not material (because the Examiner already had similar information on which to make a judgment on patentability).  Material information may be

deemed withheld if it was included along with large quantities of other information that is not material so that it would have been hard for the Examiner to recognize its materiality.

Because the degree of materiality of the information is factored into the ultimate determination I make concerning the enforceability of the patent, the jury form will ask you to identify the issue for which the information or statements was material and to rate its materiality on a scale from one to ten. You may only find information or statements to be material if there is clear and convincing evidence that they are material.

**Intent to Deceive**

In order for inequitable conduct to have occurred, Apple must establish that any failure to disclose material information/false or misleading statements were done with an intent to deceive the Examiner.  If the failure to disclose material information/false or misleading statements occurred through negligence, oversight, carelessness, or an error in judgment, even if it was grossly negligent, then there was no intent to deceive and there is no inequitable conduct.

Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive.  Intent also may be shown through indirect evidence or, in other words, it may be inferred from conduct.  However, intent requires that the person allegedly making false statements know they are false or allegedly withholding information know that it is material.

**Balancing of Materiality and Intent**

If you find that Apple has proved by clear and convincing evidence that material information was withheld or materially misleading statements were made or false information provided and, further, that these acts or omissions were done with an intent to deceive the Examiner, you must then weigh the degree of materiality and the degree of intent to determine

whether, on balance, the evidence clearly and convincingly establishes that inventors and/or patent holder committed inequitable conduct and the patents-in-suit should in fairness be declared unenforceable.  When performing this balancing, the higher the level of materiality of the withheld information and/or the false and misleading statements, the lower the level of intent that is required to establish inequitable conduct, and vice versa.  Materiality and intent to deceive are separate issues: proof of materiality does not give rise to an inference of intent to deceive, and proof of an intent to deceive does not give rise to an inference of materiality. There must be clear and convincing evidence that establishes materiality and there must be clear and convincing evidence that establishes an intent to deceive.  If clear and convincing evidence of either, or both, is missing, there can be no inequitable conduct.

Authority:  The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction B.5.1 (February 18, 2010); 35 U.S.C. § 282; *Larson Mfg. Co. of S.D. v. Aluminart Prods.*, Ltd., 559 F.3d 1317 (Fed. Cir. 2009) (vacating district court's determination of inequitable conduct because of lack of materiality); *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008) ("[A]t least a threshold level of each element—i.e., both materiality and intent to deceive—must be proven by clear and convincing evidence." (citations omitted)); *Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1315 (Fed. Cir. 2006) (explaining PTO Rule 56 standards of materiality); *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181 (Fed. Cir. 2006); *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1363 (Fed. Cir. 2003); *Upjohn Co. v. Mova Pharm. Corp.*, 225 F.3d 1306 (Fed. Cir. 2000); *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565 (Fed. Cir. 1991); *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867 (Fed. Cir. 1988).

### 7.2 LACHES (PLAINTIFF'S PROPOSED INSTRUCTION)[61]

MWT contends that even if you find that they infringed the Apple Patent and that the Apple Patent is not invalid, Apple is not entitled to recover damages for acts that occurred before it filed its counterclaim because: (1) Apple delayed filing the lawsuit for an unreasonably long and inexcusable period of time, and (2) MWT has been or will be prejudiced in a significant way due to Apple's delay in filing the lawsuit. This is referred to as laches. MWT must prove delay and prejudice by a preponderance of the evidence.

Whether Apple's delay was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during the period of delay. There is no minimum amount of delay required to establish laches. If suit was delayed for six years, a rebuttable presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted. This presumption shifts the burden of proof to Apple to come forward with evidence to prove that the delay was justified or that material prejudice did not result, and if Apple presents such evidence, the burden of proving laches remains with MWT. Laches may be found for delays of less than six years if there is proof of unreasonably long and unjustifiable delay causing material prejudice to MWT. Facts and circumstances that can justify a long delay can include:

(1) being involved in other litigation during the period of delay;

(2) being involved in negotiations with MWT during the period of delay;

---

[61] Apple objects to these instruction in their entirety as these issues are a matter of law for the Court to decide, not the jury.  Apple objects to this instruction as MWT has failed to provide discovery or a substantive interrogatory response regarding this defense.  For example, MWT failed to provide any facts or theories in its interrogatory response to establish how the delay was unreasonable or greater than six years or any facts or theories to establish how the delay prejudiced MWT.  Therefore, MWT should be precluded from ambushing Apple with any new such theories at trial.

(3) being involved in a dispute about ownership of the patent during the period of delay; or

(4) minimal amounts of allegedly infringing activity by MWT during the period of delay.

If you find unreasonable and unjustified delay occurred, to find laches, you must also determine if MWT suffered material prejudice as a result of the delay. Prejudice to MWT can be evidentiary or economic. Whether MWT suffered evidentiary prejudice is a question that must be answered by evaluating whether delay in filing this case resulted in MWT not being able to present a full and fair defense on the merits to Apple's infringement claim. Not being able to present a full and fair defense on the merits to an infringement claim can occur due to the loss of important records, the death or impairment of an important witness(es), the unreliability of memories about important events because they occurred in the distant past, or other similar types of things. Economic prejudice is determined by whether or not MWT changed its economic position in a significant way during the period of delay resulting in losses beyond merely paying for infringement (such as if MWT could have switched to a noninfringing product if sued earlier), and also whether MWT's losses as a result of that change in economic position likely would have been avoided if Apple had filed this lawsuit sooner. In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of fairness, given all the facts and circumstances. Thus, you may find that laches does not apply if there is no evidence establishing each of the three elements noted above (unreasonable delay, lack of excuse or justification, and significant prejudice). You may also find that even though all of the elements of laches have been proved, it should not, in fairness, apply, given all the facts and circumstances in this case.

AUTHORITY:  Federal Circuit Bar Association Model Patent Instructions §5.2; 35 U.S.C. § 282; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773-74 (Fed. Cir. 1995); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039 (Fed. Cir. 1992) (en banc).

### 7.3    EQUITABLE ESTOPPEL (PLAINTIFF'S PROPOSED INSTRUCTION)[62]

The owner of a patent may forfeit its right to any relief from an infringer where: (1) the owner of a patent communicates something in a misleading way to the infringing party about the lack of infringement or about not being sued, (2) the infringer relies upon the misleading communication from the owner of a patent, and (3) the infringer will be materially harmed if the owner of a patent is allowed to assert a claim relating to the issue that is inconsistent with the owner of a patent's prior misleading communication. This is referred to as an "equitable estoppel" and it is a defense that MWT contends precludes any recovery by Apple in this lawsuit. MWT must prove each of these elements by a preponderance of the evidence, but even if all these elements are proven, equitable estoppel need not be found if such a finding would be unfair in light of the conduct of the parties.

A communication may be made through written or spoken words, conduct, silence, or a combination of words, conduct, and silence. Conduct may include action or inaction. Whether in fact Apple communicated with MWT prior to the filing of this lawsuit, and whether in fact that communication, if you find there to have been any, was misleading, are questions that must be answered by considering the facts and circumstances as they existed at the time.

Material harm to MWT can be evidentiary or economic in form. Whether MWT suffered evidentiary harm is a question that must be answered by evaluating whether MWT will be unable to present a full and fair defense on the merits of Apple's claim(s). Not being able to present a

---

[62] Apple objects to these instruction in their entirety as these issues are a matter of law for the Court to decide and not the jury.  Apple objects to this sentence as MWT has failed to provide discovery or a substantive interrogatory response regarding this defense.  For example, MWT failed to provide any facts or theories in its interrogatory response to establish there was a misleading communication, reliance on the communication or material harm.  Therefore, MWT should be precluded from ambushing Apple with any new such theories at trial.

full and fair defense on the merits of Apple's claims can occur due to the loss of important records, the death or impairment of an important witness(es), the unreliability of memories about important events because they occurred in the distant past, or other similar types of things. Whether MWT suffered economic prejudice is a question that must be answered by evaluating whether MWT changed its economic position as a result of its reliance on any misleading communication from Apple, resulting in losses beyond merely paying for infringement (such as if MWT could have switched to a noninfringing product if sued earlier) and whether losses as a result of any change in economic position could have been avoided.

AUTHORITY:  Federal Circuit Bar Association Model Patent Instructions §5.3; 35 U.S.C. § 282; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995) (to establish equitable estoppel, one must show reliance on patentee's misleading conduct); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc).

### 7.4     WAIVER (PLAINTIFF'S PROPOSED INSTRUCTION)[63]

MWT also contends that even if you find that MWT infringed the Apple Patent and that the Apple Patent is not invalid, Apple is also not entitled to damages because they waived their patent rights.  "Waiver" is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right. "Waiver" can be evidenced by silence or inaction for such an unreasonable period of time as to indicate an intention to waive a known right or by conduct of such a nature as to mislead the other party into an honest belief that the waiver was intended or assented to.

To find waiver, MWT must prove that: (1) Apple had patent rights at the time of the waiver; (2) Apple had constructive or actual knowledge of its patent rights; and (3) Apple intended to relinquish its rights or that its conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished.

AUTHORITY:  *Broadcast Satellite Intern., Inc. v. National Digital Television Center, Inc.*  323 F.3d 339, 346 (5th Cir. 2003); *Advanced Technology Incubator, Inc. v. Sharp Corp.*, 2009 WL 4670435, 5  (E.D. Tex., 2009); *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008).

---

[63] Apple objects to these instruction in their entirety as these issues are a matter of law for the Court to decide and not the jury.  Apple objects to this sentence as MWT has failed to provide discovery or a substantive interrogatory response regarding this defense.  For example, MWT failed to provide any facts or theories in its interrogatory response to establish an intention to surrender a known right.  Therefore, MWT should be precluded from ambushing Apple with any new such theories at trial.

**8.      DAMAGES**

**8.1     DAMAGES—GENERALLY**

I will now instruct you on damages.  If you find that Apple has infringed one or more

valid claims of the '227, '313, '427, or '999 patents, you must determine the amount of money

damages to which Mirror Worlds is entitled.  If you find that MWT has infringed one or more

valid claims of the '101 patent, you must determine the amount of money damages to which

Apple is entitled.  Each of these determinations must be determined separately and individually

as you did when you considered whether the patents were infringed or invalid.  By instructing

you on damages, I do not suggest that one or the other party should prevail on the issues of

infringement or invalidity.  These instructions are provided to guide you on the calculation of

damages in the event you find infringement of a valid patent claim and, thus, must address the

damages issue.

The amount of damages must be adequate to compensate the patent holder for the

infringement [Plaintiff proposes: ; but, in no event may the damages award be less than a

reasonable royalty][64].  At the same time, your damages determination must not include additional

sums to punish either alleged infringer or to set an example.  You may award compensatory

damages only for the loss that the patent holder proves was more likely than not caused by the

alleged infringer's infringement.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions,
Instruction 6.1 (June 17, 2009); "AIPLA's Model Patent Jury Instructions," Am. Intellectual
Prop. Law Ass'n Instruction 12.0 (Mar. 27 2008); 35 U.S.C. § 284.

---

[64] Apple objects to this proposed language as confusing and unnecessary.  Plaintiff proposes to
keep this language as it reads in 35 U.S.C. § 284 and  The National Jury Instruction Project,
Model Patent Jury Instructions, Instruction 6.1 (June 17, 2009).

**8.2     DAMAGES—BURDEN OF PROOF**

Where the parties dispute a matter concerning damages, it is the patent holder's burden to prove that it is more probable than not that the patent holder's version is correct.  The patent holder must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision.  However, the patent holder is not entitled to damages that are remote or speculative.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 6.2 (June 17, 2009); *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1293-94 (Fed. Cir. 2007); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1072 (Fed. Cir. 2003); *Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991).

### 8.3    DAMAGES—WHEN DAMAGES BEGIN

[Plaintiff Proposes:  In this case, if you find that Apple has infringed the Mirror World Patents, you should assess damages beginning on March 14, 2002.  If you find that MWT has infringed the Apple Patent, you should assess damages against MWT beginning November 25, 2002.][65], [66]

[Defendant Proposes:  The amount of damages the patent holder can recover is limited to those acts of infringement that occurred after the patent holder gave the alleged infringer notice that it infringed the patent.  Notice of infringement can be actual or constructive, and I will explain in a moment what that means.

Actual notice means that the patent holder communicated to the alleged infringer a specific charge of infringement of the patent by the accused products.  This notice is effective as of the date given.  The filing of a complaint or infringement counterclaim qualifies as actual notice.  Mirror Worlds filed a complaint against Apple on March 14, 2008 and bears the burden

---

[65] Mirror Worlds contends that there was no obligation to give notice under 35 U.S.C. § 287 because there was either no product made, used or sold in the six years prior to the filing of the law suit, or the relevant patent only contained method claims. )  *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219-20 (Fed. Cir. 2002);  *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *see also Halliburton Serv. v. Smith Int'l, Inc.*, 317 F. Supp. 2d 719, 725 (E.D.Tx. 2004), Authority:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 6.3 (June 17, 2009); 35 U.S.C.  § 287(a); American Medical Systems, Inc. v. Medical Engineering Corp., 6 F.3d 1523, 1537 (Fed. Cir. 1993); Amsted Indus. Inc. v. Buckeye Steel Castings Co., 24 F.3d 178, 187 (Fed. Cir. 1984).
[66] Apple objects to Mirror Worlds' proposed instruction because there is a dispute regarding Mirror Worlds' compliance with 35 U.S.C. § 287.  As patentee, Mirror Worlds bears the burden of proving compliance with 35 U.S.C. § 287 in order to obtain damages prior to filing suit. *Dunlap v. Schofield,* 152 U.S. 244 (1894); Nike, Inc. v. Wal-Mart Stores, Inc., 138 F.3d 1437, 1447 (Fed. Cir. 1998).  Mirror Worlds has admitted that a Scopeware product is an embodiment of the '227 and '427 patents, which do not only contain method claims.  MWT did not cease business operations, including sales of Scopeware products, until June 2004.  (Docket No. 123 at par. 5.)

of establishing it is more probable than not that it notified Apple of the alleged infringement on an earlier date.  Apple filed an infringement counterclaim against Mirror Worlds Technologies on November 25, 2008 and bears the burden of establishing it is more probable than not that it notified Mirror Worlds Technologies of the alleged infringement on an earlier date.

Constructive notice means that the patent holder complied with the marking requirement of the patent law.  "Marking" means that substantially all of the products made, offered for sale, or sold under the patent are marked to display the word 'patent' or the abbreviation 'pat.', together with the number of the patent.  The patent holder has the burden of establishing substantial compliance with the marking requirement.  To do so, the patent holder must show it is more probable than not that substantially all of the products it made, offered for sale, or sold under the patent were marked, and that the patent holder made reasonable efforts to ensure that its licensees who made, offered for sale, or sold products under the patent marked substantially all of their products.

Your job is to calculate damages from the date that each alleged infringer received either actual or constructive notice, whichever was first.  You should not award damages for any infringement occurring before the alleged infringer first received actual or constructive notice.][67]

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 6.3 (June 17, 2009); 35 U.S.C.  § 287(a); *American Medical Systems, Inc. v. Medical Engineering Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1984).

---

[67] *See* n. 65 *supra*.

### 8.4     REASONABLE ROYALTY (PLAINTIFF'S PROPOSED INSTRUCTION)[68]

The type of damages at issue in this case is called a reasonable royalty.  Generally, the patent laws define a reasonable royalty as the reasonable amount that someone wanted to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.  A reasonable royalty is the minimum amount of damages that a patent owner may recover for infringement.

The patent law specifically provides that the amount of damages that an infringer must pay for infringing a patent may not be less than a reasonable royalty for the improper use that the infringer made of the invention.  A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall.

The objective of the reasonable royalty calculation is to determine the amount necessary to adequately compensate for the infringement.  Each party has presented a damages expert.  Even if you find infringement, you may award damages that are greater than or less than the amounts presented by this expert, so long as the award is not less than a reasonable royalty.

AUTHORITY: "AIPLA's Model Patent Jury Instructions," Am. Intellectual Prop. Law Ass'n Instruction 12.0 (Mar. 27 2008);§§ 12.2, 12.14; *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1109 (Fed. Cir. 1996); *MercExchange, LLC v. eBay, Inc.*, 275 F. Supp. 2d 695, 709 (E.D. Va. 2003), vacated on different grounds by *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).

---

[68] Apple objects to this instruction in its entirety as it is outside the Model Patent Jury Instructions preferred by the Court and is cumulative and unnecessary in light of instruction no. "7.5 Reasonable Royalty – Definition."

### 8.5     REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention.  A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the alleged infringer taking place just before the time when the infringement first began.  In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and alleged infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations.  However, you must assume that both parties believed the patent was valid and infringed.  In addition, you must assume that the patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In determining the royalty that would have resulted from the hypothetical negotiation you may consider real world facts including the following to the extent they are helpful to you:

- Licenses or offers to license the patent at issue in this case.

- Licenses involving comparable patents.

- The licensing history of the parties.

- Licensing practices in the relevant industry.

- Whether the patent owner had an established policy of refusing to license the patent at issue.

- The relationship between the patent owner and alleged infringer, including whether or not they were competitors.

- The significance of the patented technology in promoting sales of the alleged infringer's products and earning it profit.

- Alternatives to the patented technology and advantages provided by the patented

technology relative to the alternatives.

- The portion of the alleged infringer's profit that should be credited to the invention as distinguished from nonpatented features, improvements or contributions.

- Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

[Plaintiff proposes: You must also bear in mind that the hypothetical negotiation is deemed to be an arm's length transaction and any prior royalty arrangement's between a patent owner and a related entity or non-competitor is not determinative when analyzing the hypothetical negotiation.][69], [70]

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 6.6 (June 17, 2009); 35 U.S.C. § 284; *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

---

[69] Plaintiff proposes this additional language to make clear to the jury that agreements between related companies are not determinative on a hypothetical negotiation with a potential competitor.  Minks v. Polaris Indus., 546 F. 3d 1364, 1373 (Fed. Cir. 2008) (finding that the hypothetical negotiation is deemed to be an arm's length negotiation and applying little weight to a royalty rate between and inventor and his related company).

[70] Apple objects to the inclusion of this paragraph as being a misstatement of the law, unsupported by the cited case, and outside The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 6.1 (June 17, 2009.  Moreover, such an instruction is inapplicable to the facts of this case.  Unlike *Minks v. Polaris Indus.*, this sale of the patents from Mirror Worlds Technologies to Recognition Interface was not "intra-family" sale of the patents, nor was it a license from the inventor to his own company.  *See* 546 F. 3d 1364, 1373 (Fed. Cir. 2008).

### 8.6    REASONABLE ROYALTY – DOUBTS RESOLVED AGAINST INFRINGER    (PLAINTIFF'S PROPOSED INSTRUCTION)[71]

All doubts as to the amount of infringing products, resulting from the infringer's misleading documentary evidence, must be resolved against the infringer in the calculation of the reasonable royalty base.  Where an infringer's failure to keep complete and accurate records prevents you from determining accurately the number of infringing units involved, any uncertainty must be resolved against the infringer.

AUTHORITY:  *Sensonics, Inc. v. Aerosonic Corp.*, 83 F.3d 1566 (Fed. Cir. 1996); *Pentech Int'l v. Hayduchok*, 931 F. Supp. 1167 (S.D.N.Y. 1996); *Lam, Inc. v. Johns-Manville Corp.*, 718 F. 2d 1056, 1065 (Fed. Cir. 1983).

---

[71] Apple objects to this instruction in its entirety as Plaintiff has failed to lay any foundation for such an instruction and it completely unnecessary and prejudicial.  *Sensonics, Inc. v. Aerosonic Corp.* dealt with drawing an adverse inference against an infringer that "had apparently destroyed its manufacturing records after [the] litigation began."  81 F.3d 1566, 1572 (Fed. Cir. 1996); *see also Golight, Inc. v. Wal-Mart Stores, Inc.*, 216 F. Supp. 2d 1175, 1181 (D. Colo. 2002) (where certain damages records were lacking, the district court noted that "[u]nlike *Sensonics*, however, this Court is not faced with evidence that the infringer willfully destroyed the relevant documents.").  Mirror Worlds has not produced any evidence that Apple has kept inaccurate or incomplete accountings or records, or that Apple destroyed records after the litigation began, and no such instruction should be given without establishing such a contention.

### 8.7    NON-INFRINGING ALTERNATIVES (DEFENDANT'S PROPOSED INSTRUCTION)[72]

In determining a reasonable royalty, you may consider whether or not the alleged infringer had a commercially acceptable non-infringing alternatives to taking a license from the patent holder that were available at the time of the hypothetical negotiations and whether that would have affected the reasonable royalty the parties would have agreed upon.

AUTHORITY:  *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

---

[72] Plaintiff objects to this instruction as duplicative of the Reasonable Royalty- Definition Instruction which already addresses alternatives.

### 8.8   FORM OF ROYALTY (DEFENDANT'S PROPOSED INSTRUCTION) [73]

A reasonable royalty may be awarded in the form of either a lump-sum, paid-up royalty payment or a running royalty.  You should consider all the evidence in determining whether the hypothetical negotiators would have agreed to a lump-sum license or a running royalty license. A "lump sum paid up royalty" is a fixed amount paid to the patent holder regardless of the amount of use of the purported invention over time.  A "running royalty" is a royalty determined by the amount of use of the purported invention over time.

If you determine that the patent holder is entitled to a running royalty, you must determine the appropriate royalty base, which is the portion of the alleged infringer's profits or sales revenue that should fairly be subject to a royalty.  It is the patent holder's burden to prove the appropriate royalty base.

The patent holder is entitled to a royalty only on the portion of the revenue base or the profits that reflects the value of the patented invention.  It is this portion of the profits or revenue base that is subject to the royalty.  This is called an "apportionment."

AUTHORITY:  *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325-32 (Fed. Cir. 2009); *IP Innovation L.L.C. v. Red Hat, Inc.*, No. 2:07-cv-447 (RRR), 2010 U.S. Dist. LEXIS 28372 (E.D. Tex. Mar. 2, 2010).

---

[73] Plaintiff objects to this instruction as unnecessary, duplicative of the Reasonable Royalty-Definition Instruction and because it is more properly the subject of expert testimony that an instruction on the law from the Court.

**8.9     DAMAGES MAY NOT BE PUNITIVE OR SPECULATIVE (DEFENDANT'S PROPOSED INSTRUCTION)[74]**

You must not award the patent holder more damages than are adequate to compensate for the infringement.  Nor shall you include any additional amount for the purpose of punishing defendant or setting an example.  You must not consider the patent holder's allegations of willfulness in considering damages or take into account any evidence relating to those allegations.  Consideration of willfulness is entirely separate from the question of damages.  You may not increase damages because you find willfulness.  Nor may you include damages that are speculative, damages that are only possible or damages that are based on guesswork.

AUTHORITY:  Fifth Circuit Pattern Jury Instructions – Civil, § 9.11 Damages May Not Be Punitive or Speculative (2006).

---

[74] Plaintiff objects to this instruction as duplicative of the Damages-Generally Instruction which already addresses punitive damages.

**8.10    INSTRUCTIONS FOR DELIBERATIONS**

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.  Remember that in a very real way you are the judges—judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.  After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions and sign and date the verdict form.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.

Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.  You may now retire to the jury room to conduct your deliberations.

AUTHORITY:  Fifth Circuit Pattern Jury Instructions – Civil, §§ 2.11-2.12, 2.21 (2006).