**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **MIRROR WORLDS, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 6:08-CV-88 LED** |
| **v.** | § | |
| | § | |
| **APPLE INC.** | § | |
| | § | |
| **Defendant.** | § | |

**COURT'S CHARGE**

## 1. INTRODUCTION

**MEMBERS OF THE JURY**:  You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made during trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist you in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

1

## 1.1  CONSIDERING WITNESS TESTIMONY

You the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.  By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have testified to, if he or she had been permitted to answer the question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess.  We met because often during a trial something comes up that does not involve the jury.  You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

## 1.2  HOW TO EXAMINE THE EVIDENCE

Certain testimony in this case has been presented to you through a deposition.  A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness testimony may be presented, under oath, in the form of a deposition.  Some time before this trial, attorneys representing the parties in this case questioned this witness under oath.  This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weight and otherwise considered by you insofar as possible the same as if the witness had been present and had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

Unless you are instructed otherwise, the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence such as testimony of an eyewitness.  The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

3

## 1.3  EXPERT WITNESS

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is called an expert witness and is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he or she testifies regularly as an expert witness and that income from such testimony represents a significant portion of the expert's income.

## 2.  CONTENTIONS OF THE PARTIES

Sometimes during the course of the trial, the issues and the disputes get narrowed.  That has happened in this case.  The issue that Mirror Worlds infringes Apple's patent is no longer in the case.  The issue of whether Apple's iPhone, iPad, and iPod infringe Mirror Worlds patents also is no longer in the case.

Mirror Worlds contends that Apple has in the past and/or continues to make, use, offer to sell, sell or import products and/or methods that infringe at least one of claims 13 and 22 of the '227 Patent, claims 1, 8, 16, 18 and 25 of the '427 Patent, and claims 1, 2, 3, 9 and 11 of the '313 Patent. Apple denies the allegations that it has infringed any claim of the Mirror World Patents.  Apple also contends that the '227 Patent, the '313 Patent, and the '427 Patent are invalid because: they are not new over the prior art; they would have been obvious in view of the prior art; and they fail to satisfy the written description and enablement requirements.

Your job is to decide whether the asserted claims of the '227 Patent, '313 Patent, and '427

Patent have been infringed and whether any of the asserted claims of those '227, '313, and '427 patents are invalid.  Invalidity is a defense to infringement.  Therefore, even though the United States Patent and Trademark Office or "Patent Office" examiner has allowed the claims of the '227, '313, and '427 Patents, you, the jury, must decide whether the claims of the patents are invalid.

If you decide that any claim of a patent has been infringed and that claim is not invalid, you will then need to decide any money damages to be awarded to Mirror Worlds as compensation for the infringement.

You will also need to decide whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damages award you give.  I will take any determination of willfulness into account later in the proceedings.

## 3. BURDENS OF PROOF

As I told you at the beginning of the trial, in any legal action, facts must be proved by a required amount of evidence, known as the "burden of proof."  In a patent case such as this, there are two different burdens of proof that are used.  The first is the "preponderance of the evidence" standard and the second is the "clear and convincing" standard.

The "preponderance of the evidence" standard means that the evidence persuades you that a claim is more likely true than not true.

The "clear and convincing standard" means that the evidence produces in your mind a firm belief or conviction as to the matter at issue.  The clear and convincing evidence standard requires greater proof than is necessary for the preponderance of the evidence standard.

Mirror Worlds has the burden of proving infringement by a preponderance of the evidence. In determining whether any fact has been proved by a preponderance of the evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of

who may have called them, and all exhibits received in evidence regardless of who may have produced them.  If the proof establishes that all essential parts of Mirror Worlds infringement claim are more likely true than not true, then you should find for Mirror Worlds as to that claim.

If you find that Apple infringed one or more of the Asserted Claims, then that party has the burden of proving its additional contention that the infringement was willful by clear and convincing evidence.  The clear and convincing evidence standard requires a greater degree of proof than is necessary for the preponderance of the evidence standard.  The proof must establish a firm belief or conviction in your mind that infringement was willful for you to find for Mirror Worlds as to the willful infringement issue.

As issued United States patents, Mirror Worlds Patents are presumed to be valid.  Apple has the burden of overcoming that presumption and proving invalidity of the Mirror Worlds Patents by clear and convincing evidence.  In determining whether any fact has been proved by clear and convincing evidence, you may, unless otherwise instructed, consider stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.  The clear and convincing evidence standard requires a greater degree of proof than is necessary for the preponderance of the evidence standard.  The proof must establish a firm belief or conviction in your mind that the invalidity claims are correct, for you to find that the Mirror Worlds Patents are invalid.

## 4.  THE MEANING OF CLAIM TERMS

## 4.1  PATENT CLAIMS

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.  If you would like to

review my instructions at any time during your deliberations, they will be available to you in the jury room.

The claims of a patent are the numbered sentences at the end of the patent.  The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing.  Claims may describe methods, products, such as machines or chemical compounds, or processes for making or using a product.  In this case, Mirror Worlds has asserted product and method claims from the Mirror Worlds Patents.

Claims are usually divided into parts or steps, called "limitations" or "elements."  For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop.  In this example, the tabletop, legs, and glue is each a separate limitation of the claim.

## 4.2    CONSTRUCTION OF THE CLAIMS

In deciding whether or not an accused method or product infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use those meaning when you decide whether or not the patent claims are infringed, and whether or not they are invalid.  I have interpreted the meaning of some of the language in the patent claims involved in this case.  My interpretation of those claims appears in Appendix A to this charge.  The claim language I have not interpreted for you in Appendix A is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the art.

## 4.3  OPEN-ENDED OR "COMPRISING" CLAIMS

The beginning, or preamble, of certain claims use the word "comprising." "Comprising"

7

means "including" or "containing but not limited to."  That is, if you decide that an accused product or the use of an accused product includes all the requirements or steps in that claim, the claim is infringed.  This is true even if the accused method includes components or steps in addition to those requirements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

## 4.4  INDEPENDENT AND  DEPENDENT CLAIMS

The Mirror Worlds Patents contain independent and dependent claims.  A dependent claim refers to another claim called a "base claim", while an independent claim does not refer to any other claim.  The base claim, from which a dependent claim depends, may be an independent claim or another dependent claim.  The dependent claim includes or incorporates each of the requirements of the base claim, and one or more additional requirements.

In order to find infringement of each of the dependent claims of the patents-in-suit, you must first determine whether the base claim from which it depends has been infringed.  If you decide that the base claim has not been infringed, then the dependent claim cannot have been infringed.  If you decide that the base claim has been infringed, you must then separately determine whether each additional requirement of the dependent claim has also been included in accused product or use of the accused product.  If each additional requirement has been included, then the dependent claim has been infringed.

Mirror Worlds must prove by a preponderance of the evidence that a patent claim has been infringed.

**5.  INFRINGEMENT**

**5.1  DIRECT INFRINGEMENT—GENERALLY**

A patent claim may be directly infringed in two ways.  A claim may be "literally" infringed or it may be infringed under the "doctrine of equivalents."  I will now instruct you on rules you must follow to determine whether Mirror Worlds has proven that Apple has infringed one or more claims of the Mirror Worlds Patents.

**5.2  DIRECT INFRINGEMENT—LITERAL INFRINGEMENT**

You must decide whether Apple has made, used, sold or offered for sale within the United States, or imported into the United States, a product or method covered by one or more of  claims 13 and 22 of the '227 Patent, claims 1, 8, 16, 18 and 25 of the '427 Patent, and claims 1, 2, 3, 9 and 11 of the '313 Patent.  You must compare each claim to the Apple's product or method to determine whether every requirement of the claim is included in the accused product or method.

To prove literal infringement, Mirror Worlds must prove by a preponderance of the evidence that Apple's accused product or use of an accused product includes every requirement or step in a single claim of its patents-in-suit.  If an accused product or use of an accused product omits any requirement or step recited in a claim of Mirror Worlds patents, Apple does not infringe that claim. In making your determination, you must consider each claim separately, and each accused product separately.

For literal infringement, Mirror Worlds is not required to prove that Apple intended to infringe or knew of the patent.

**5.3  DIRECT INFRINGEMENT—DOCTRINE OF EQUIVALENTS**

Mirror Worlds alleges that even if there is no literal infringement, the asserted patent claims of the Mirror Worlds Patents have been infringed under the "doctrine of equivalents."

9

To prevail on its allegation of infringement, Mirror Worlds must prove by a preponderance of the evidence that the accused product or use of the accused product contains requirements identical or equivalent to each claimed requirement or step of the patented invention. You must proceed on a requirement-by-requirement or step-by-step basis. Mirror Worlds must establish that each requirement in the claim is present in the accused product, either literally or under the doctrine of equivalents.

A claim requirement is present in an accused product or method under the doctrine of equivalents if the difference between the claim requirement and a corresponding aspect of the accused product or method is insubstantial.

In making this determination, you may consider whether the corresponding aspect or step performs substantially the same function in substantially the same way to achieve substantially the same result as the requirement in the claim. You may also consider whether people of ordinary skill in the art believed that the corresponding aspect or step of the accused product or method and the requirement recited in the patent claim were interchangeable at the time of the alleged infringement. The proper time for evaluating equivalency—and thus knowledge of interchangeability between requirements—is the time of infringement, not the time the patent was issued. Under the doctrine of equivalents, those of ordinary skill in the art do not have to know of the equivalent when the patent application was filed or when the patent issued. Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims. Also, changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents.

## 5.4  WILLFUL INFRINGEMENT

In this case, Mirror Worlds contends that Apple willfully infringed the claims of the Mirror

World Patents.  If you find that Apple has infringed one or more valid claims of the Mirror Worlds Patents you must determine whether the infringement was willful.  Willful infringement must be proven by clear and convincing evidence, which is a higher burden of proof than for infringement.

The issue of willful infringement relates to the amount of damages Mirror Worlds is entitled to recover in this lawsuit.  If you decide that Apple willfully infringed one or more claims of the Mirror Worlds patents then it is my job to decide whether or not to award increased damages.  You should not take this factor into account in assessing damages, if any, to be awarded to Mirror Worlds.

To prove willful infringement, Mirror Worlds must persuade you with clear and convincing evidence that before March 14, 2008, Apple acted with reckless disregard of the claims of the Mirror Worlds patents.  "Reckless disregard" requires two parts:  the first concerns Apple's conduct, the second concerns Apple's state of mind.

When considering the Apple's conduct, you must decide whether Mirror Worlds has proven it is highly probable that the Apple's conduct was reckless; that is, that Apple proceeded with the allegedly infringing conduct with knowledge of the patent, and in the face of an objectively high likelihood that it was infringing the claims of a valid and enforceable patent.  Because this is an objective issue, the state of mind of Apple is not relevant.  Legitimate or credible defenses to infringement, even if ultimately not successful, demonstrate a lack of recklessness.

If you conclude that Mirror Worlds has proven that the Apple's conduct was reckless, then you need to consider the second part of the test.  You must determine whether Mirror Worlds proved it is highly probable that the unjustifiably high risk of infringement was known or so obvious that it should have been known to Apple.  In deciding whether Apple satisfied the state-of-mind part of the test, you should consider all facts surrounding the alleged infringement including, but not limited

11

to, the following:

1.   whether Apple acted in a manner consistent with the standards of commerce for its industry;

2.   whether Apple intentionally copied, without a reasonable basis, a product or method of Mirror Worlds covered by one or more claims of the patent, as distinguished from trying to "design around" the patent by designing a product or method that Apple believed did not infringe those claims; and

3.   whether Apple had a reasonable basis to believe that it did not infringe or had a reasonable defense to infringement, such as that the patent was invalid.

## 6.  INVALIDITY

## 6.1  INVALIDITY-GENERALLY

Patent invalidity is a defense to patent infringement.  Even though the Patent Office examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

The issuance of a patent by the Patent Office provides a presumption that the patent is valid. From the issuance of the patent, it is presumed that a claimed invention is "novel," "useful," "not obvious," and satisfies the other legal requirements for a valid U.S. patent.

This presumption of validity, however, is a rule of evidence that places the burden upon the party disputing the validity of a patent claim, to come up with clear and convincing evidence that the Patent Office acted erroneously in issuing the patent.

Each claim of a patent is presumed valid independently of the validity of the other claims. Accordingly, the party challenging validity bears the burden of proving invalidity of each claim with facts supported by clear and convincing evidence.  In making your determination as to whether a

12

patent claim is valid or invalid, you must consider each patent and each of the claims of a patent and separately and individually, as you did when you considered whether the claim was infringed or not. If the evidence is clear and convincing that a claim in a given patent fails to meet the essential requirements of the patent laws, then that patent claim is invalid.  However, if you find that one or more claims of a patent fail to meet the essential requirements of the patent laws, it does not necessarily mean that the remaining claims of that patent are also deficient or invalid.

Likewise, if you find that one or more claims of one patent is invalid, that does not necessarily mean that any claim of any other patent is similarly invalid.

The presumption of validity remains intact and the burden of proof remains on the party challenging validity, throughout this litigation.  In other words, the clear and convincing standard does not weaken, and the burden of proof never shifts to the patent owner to prove that its patents are valid.

I will now instruct you on the invalidity issues you should consider.  As you consider these issues, remember that Apple bear the burden of proving with clear and convincing evidence that the claims are invalid.

## 6.2  ANTICIPATION—PUBLICLY USED OR KNOWN, OR PREVIOUSLY PUBLISHED

Apple contends that the asserted claims of the Mirror Worlds Patents are invalid because the claimed invention is not new.  For a claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention. In patent law, such previous device, method, publication or patent is called a "prior art reference." If a patent claim is not new we say it is "anticipated" by a prior art reference.

Apple must prove with clear and convincing evidence  that the claim was anticipated.  The

disclosure in the prior art reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of computers looking at that one reference would be able to make and use at least one embodiment of the claimed invention.

Anticipation also occurs when the claimed invention inherently (necessarily) results from practice of what is disclosed in the written reference, even if the inherent disclosure was unrecognized or unappreciated by one of ordinary skill in the field of the invention.

Generally, an alleged infringer can show that a patent holder's patent claim was not new:

· if the claimed invention was already publicly known or publicly used by others in the United States before the date of invention;

· if the claimed invention was already patented or described in a printed publication anywhere in the world before the date of invention.  To qualify as a prior art reference, a "printed publication" must be at least reasonably accessible to those interested in the field, even if it is difficult to find.  An electronic publication, including an on-line or internet publication is a "printed publication" if at least reasonably accessible to those interested in the field even if it is difficult to find; or

· if the claimed invention was already described in another published U.S. patent application or issued U.S. patent that was based on a patent application filed before the date of invention of the asserted patent.

If a patent claim is not new as explained above, you must find that claim invalid.

## 6.3  ANTICIPATION—STATUTORY BARS

Apple may prove that the patents-in-suit are invalid by showing with clear and convincing evidence  that each such claim failed to meet one of several statutory provisions in the patent laws.

14

These provisions are called "statutory bars." For a patent claim to be invalid because of a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the effective filing date of the patent application.

Here is a list of ways Apple can show that the patent application was not timely filed, that is, filed within one year of the occurrence of any of the following events:

- if the claimed invention was already patented or described in a printed publication anywhere in the world more than one year before the effective filing date of the patent application.  A reference is a "printed publication" if it is reasonably accessible to those interested in the field, even if it is difficult to find.  An electronic publication, including an on-line or internet publication, is a "printed publication" if it is at least reasonably accessible to those interested in the field, even if it is difficult to find.  or

- if the claimed invention was already being publicly or commercially used in the United States more than one year before the effective filing date of the patent application and that use was not primarily an experimental use controlled by the inventor to test whether the invention worked for its intended purpose.

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference or (2) implicitly disclosed in a single prior art reference as viewed by one of ordinary skill in the field of the invention. The disclosure in a reference does not have to be in the same words as the claim, but all of the requirements of the claim must be described in enough detail, or necessarily implied by or inherent in the reference, to enable someone of ordinary skill in the field of the invention looking at the reference to make and use at least one embodiment of the claimed invention.

A prior art reference also invalidates a patent claim when the claimed invention necessarily

results from practice of the subject of the prior art reference, even if the result was unrecognized and unappreciated by one of ordinary skill in the field of the invention.

If you find a patent claim failed to meet a statutory bar, you must find the patent claim invalid.

## 6.4  OBVIOUSNESS

In this case, Apple claims that the asserted claims of the Mirror Worlds Patents are invalid as obvious.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field of the invention at the time the patent application was filed.  This means that even if all the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of the invention who knew about all of the prior art would have come up with the claimed invention.

A patent claim composed of several requirements is not proved obvious merely by demonstrating that each of its requirements was independently known in the prior art.  Although common sense directs one to look with care at a patent application that claims as innovation the combination of known requirements according to their established functions to produce a predictable result, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the requirements in the way the claimed new invention does.  This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.  Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention although proof of this is not a requirement to prove obviousness.  Teachings, suggestions, and motivations may be found in

16

written references including the prior art itself.  However, teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ.  Additionally, teachings, suggestions, and motivations may be found in the nature of the problem solved by the claimed invention, or any need or problem known in the field of the invention at the time of and addressed by the invention.

Therefore, in evaluating whether such a claim would have been obvious, you should consider a variety of factors:

1.  Whether Apple has identified a reason that would have prompted a person of ordinary skill in the field of the invention to combine the requirements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.

2.  Whether the claimed invention applies a known technique that had been used to improve a similar device or method in a similar way.

3.  Whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.

But you must be careful not to determine obviousness using hindsight; many true inventions can seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

17

The ultimate conclusion of whether a claim is obvious should be based on your determination of several factual issues:

1.  You must decide the level of ordinary skill in the field of the invention that someone would have had at the time the claimed invention was made.

2.  You must decide the scope and content of the prior art.  In determining the scope and content of the prior art, you must decide whether a reference is pertinent, or analogous, to the claimed invention.  Pertinent, or analogous, prior art includes prior art in the same field of endeavor as the claimed invention, regardless of the problems addressed by the reference, and prior art from different fields reasonably pertinent to the particular problem with which the claimed invention is concerned.  Remember that prior art is not limited to patents and published materials, but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

3.  You must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

A.  Factors tending to show non-obviousness include:

    1.  commercial success of a product due to the merits of the claimed invention;

    2.  a long-felt, but unsolved, need for the solution provided by the claimed invention;

    3.  unsuccessful attempts by others to find the solution provided by the claimed invention;

    4.  copying of the claimed invention by others.

    5.  unexpected and superior results from the claimed invention;

6.   acceptance by others of the claimed invention as shown by praise from others in the field of the invention or from the licensing of the claimed invention; and

7.   disclosures in the prior art that criticize, discredit, or otherwise discourage the claimed invention and would therefore tend to show that the invention was not obvious.

You may consider the presence of any of these factors just listed as an indication that the claimed invention would not have been obvious at the time the claimed invention was made.

B.   Factors tending to show obviousness include:

1.   independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it.

And you may consider the presence of this factor as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

Apple must prove with clear and convincing evidence that a claimed invention was obvious. If you find that a claimed invention was obvious as explained above, you must find that claim invalid.

## 6.5  THE SCOPE AND CONTENT OF PRIOR ART

To qualify as prior art relevant to the patents-in-suit, a reference must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.  Remember that prior art is not limited to patents and published materials, but also includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

## 6.6  DIFFERENCES OVER THE PRIOR ART

In reaching your conclusion about whether or not claims of the patents-in-suit would have been obvious at the time the claimed invention was made, you should consider any difference or differences between the prior art and the claimed requirements.

## 6.7  LEVEL OF ORDINARY SKILL

Several times in my instructions I have referred to a person of ordinary skill in the field of the invention.  It is up to you to decide the level of ordinary skill in the field of the invention.  You should consider all of the evidence introduced at trial in making this decision, including:

1.  the levels of education and experience of persons working in the field;

2.  the types of problems encountered in the field; and

3.  the sophistication of the technology.

Mirror Worlds contends that the level of ordinary skill in the field of invention was someone who had a bachelor's degree in computer science, computer engineering or the equivalent, and 3-5 years of experience in the field of computer operating systems, or a post-graduate degree in computer science, computer engineering or the equivalent, and 1-2 years of experience in the field of computer operating systems.

Apple contends that the level of ordinary skill in the field of the invention was someone who had a PhD in computer science or some combination of education and experience that provided sufficient competence in the appropriate aspects of computer science, such as graphical user interface design, and some knowledge of document processing, software design and development, data structures, operating systems, backup and archiving systems, and client-server computing.

## 6.8  WRITTEN DESCRIPTION

Apple contends that claims 13 and 22 of the '227 Patent, claims 1, 8, 16, 18 and 25 of the

'427 Patent, and claims 1, 2, 3, 9 and 11 of the '313 Patent are invalid for failure of the patents to provide an adequate written description of the claimed inventions.  Apple must prove with clear and convincing evidence  these claims lacked an adequate written description.

The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would recognize that the patent application described the invention of these claims, even though the description might not use the exact words found in the claim.   The written description is adequate if it shows that the inventor was in possession of each claim of the invention at the time the application for the patent was filed, even though the claim may have been changed or new claims added during the prosecution of the application.   It is not necessary that each and every aspect of the claim be explicitly discussed, as long as a person of ordinary skill would understand that any aspect not expressly discussed is implicit in the patent application as originally filed.   If you find that one or more of the claims challenged by Apple lack an adequate written description, you must find each such claim invalid.

## 6.9  ENABLEMENT

Apple contends that claims 13 and 22 of the '227 Patent, claims 1, 8, 16, 18 and 25 of the '427 Patent, and claims 1, 2, 3, 9 and 11 of the '313 Patent are invalid because the patents do not disclose sufficient information to enable one skilled in the field of the invention, at the time the application was filed (or its effective filing date), to make and use the claimed invention. This requirement is known as the enablement requirement. If a patent claim is not enabled, it is invalid. Each claim must be analyzed for compliance with the enablement requirement. Apple must prove with clear and convincing evidence  that the claim was not enabled.

In considering whether a patent claim satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need

not expressly state information that skilled persons would be likely to know or could obtain.  Apple

bears the burden of establishing lack of enablement by showing with clear and convincing evidence

that a person skilled in the art, upon reading the patent document, would not be able to make the

invention work without undue experimentation. The fact that some experimentation may be required

for a skilled person to make or use the claimed invention does not mean that a patent's written

description fails to meet the enablement requirement. Factors you may consider in determining

whether making the invention would require undue experimentation include:

1. the quantity of experimentation necessary;

2. the amount of direction or guidance disclosed in the patent;

3. the presence or absence of working examples in the patent;

4. the nature of the invention;

5. the state of the prior art;

6. the relative skill of those in the art;

7. the predictability of the art; and

8. the breadth of the claims.

If you find that one or more of these claims did not comply with the enablement requirement,

you must find each such claim invalid.

## 7.  DAMAGES

### 7.1 DAMAGES—GENERALLY

I will now instruct you on damages.  If you find that Apple has infringed one or more valid

claims of the Mirror Worlds patents, you must determine the amount of money damages to which

Mirror Worlds is entitled.   Each of these determinations must be determined separately and

individually as you did when you considered whether the patents were infringed or invalid.  By

instructing you on damages, I do not suggest that one or the other party should prevail on the issues of infringement or invalidity.  These instructions are provided to guide you on the calculation of damages in the event you find infringement of a valid patent claim and, thus, must address the damages issue.

The amount of damages must be adequate to compensate Mirror Worlds for the infringement; but, in no event may the damages award be less than a reasonable royalty.  At the same time, your damages determination must not include additional sums to punish either  Apple or to set an example.  You may award compensatory damages only for the loss that Mirror Worlds proves was more likely than not caused by the Apple's infringement.

## 7.2  DAMAGES - BURDEN OF PROOF

Where the parties dispute a matter concerning damages, it is Mirror Worlds burden to prove by a preponderance of the evidence that it's  version is correct.  Mirror Worlds must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision.  However, Mirror Worlds is not entitled to damages that are remote or speculative.

## 7.3  DAMAGES—WHEN DAMAGES BEGIN

The amount of damages Mirror Worlds can recover is limited to those acts of infringement that occurred after Mirror Worlds gave Apple notice that it infringed the patent.  Notice of infringement can be actual or constructive, and I will explain in a moment what that means.

Actual notice means that Mirror Worlds communicated to Apple a specific charge of infringement of the patent by the accused products.  This notice is effective as of the date given. The filing of a complaint or infringement counterclaim qualifies as actual notice.  Mirror Worlds filed a complaint against Apple on March 14, 2008 and bears the burden of establishing it is more

23

probable than not that it notified Apple of the alleged infringement on an earlier date.

Constructive notice means that Mirror Worlds complied with the marking requirement of the patent law.  "Marking" means that substantially all of the products made, offered for sale, or sold under the patent are marked to display the word 'patent' or the abbreviation 'pat.', together with the number of the patent.  Mirror Worlds has the burden of establishing substantial compliance with the marking requirement.  To do so, Mirror Worlds must show it is more probable than not that substantially all of the products it made, offered for sale, or sold under the patent were marked, and that Mirror Worlds made reasonable efforts to ensure that its licensees who made, offered for sale, or sold products under the patent marked substantially all of their products.

Your job is to calculate damages from the date that Apple received either actual or constructive notice, whichever was first.  You should not award damages for any infringement occurring before Apple first received actual or constructive notice.

## 7.4  REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention.  A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and Apple taking place just before the time when the infringement first began.  It may be a running lump sum or combination of the of the two.  In considering the nature of this negotiation, the focus is on what the expectations of Mirror Worlds and alleged Apple would have been had they entered into an agreement at that time and acted reasonably in their negotiations.  However, you must assume that both parties believed the patent was valid and infringed.  In addition, you must assume that Mirror Worlds and Apple were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply

what either party would have preferred.

In determining the royalty that would have resulted from the hypothetical negotiation you may consider real world facts including the following to the extent they are helpful to you:

•   Licenses or offers to license the patent at issue in this case.

•   Licenses involving comparable patents.

•   The licensing history of the parties.

•   Licensing practices in the relevant industry.

•   Whether Mirror Worlds had an established policy of refusing to license the patent at issue.

•   The relationship between the Mirror Worlds and Apple, including whether or not they were competitors.

•   The significance of the patented technology in promoting sales of the Apple's products and earning it profit.

•   Alternatives to the patented technology and advantages provided by the patented technology relative to the alternatives.

•   The portion of the Apple's profit that should be credited to the invention as distinguished from nonpatented features, improvements or contributions.

•   Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

You must also bear in mind that the hypothetical negotiation is deemed to be an arm's length transaction and any prior royalty arrangement's between a patent owner and a related entity or non-competitor is not determinative when analyzing the hypothetical negotiation.

## 8.  INSTRUCTIONS FOR DELIBERATIONS

You must perform your duties as jurors without bias or prejudice as to any party. The law

25

does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  A corporation is entitled to the same fair trial as a private individual.  All persons, including corporations, and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.  After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to deliberate.

APPENDIX A

| Mirror Worlds '227, '313, and '427 Patents | |
|---|---|
| **Term or Phrase** (Patent and Claim) | **Court's Construction** |
| **stream** ('227 Patent, Claim 13; '313 Patent, Claim 1; '427 Patent, Claims 1, and 25) | a time-ordered sequence of documents that functions as a diary of an entity's electronic life and that is designed to have three main portions: past, present, and future |
| **main stream** ('227 Patent, Claim 13; '313 Patent, Claim 2) | a stream that is inclusive of every data unit, or document, received by or generated by the computer system |
| **including each data unit according to the timestamp in the respective chronological indicator in the main stream** ('227 Patent, Claim 13) | No Construction |
| **substream** ('227 Patent, Claim 13; '313 Patent, Claims 2 and 11) | a stream that is a subset of data units, or documents, yielded by a filter on a stream, the filter identifying certain documents within the stream |
| **stream-based operating system** ('427 Patent, Claim 1)<br><br>**document stream operating system** ('313 Patent, Claim 1; '427 Patent, Claim 25) | an operating system that is based on a time-ordered sequence of documents that functions as a diary of a person or an entity's electronic life and that is designed to have three main portions: past, present, and future |
| **timestamp to identify** ('227 Patent, Claim 13) | a date and time value that uniquely identifies each document |
| **glance views** ('313 Patents, Claims 1 and 9; '427 Patent, Claims 1, 8, 16, 25) | an abbreviated presentation of a document |
| **receding, foreshortened stack** ('313 Patents, Claims 1 and 9; '427 Patent, Claims 1,  18, and 25) | No Construction |
| **archiving** ('313 Patents, Claims 1 and 9; '427 Patent, Claims 1 and 8) | copying or moving documents to a secondary storage medium |
| **document organization facility** ('427 Patent, Claims 1, 8, 16, and 25) | software that organizes documents |
| **data unit** ('227 Patent, Claim 13) | an item of information of significance to the user that the user considers as a unit |

| Mirror Worlds '227, '313, and '427 Patents | |
|---|---|
| **Term or Phrase** (Patent and Claim) | **Court's Construction** |
| **abbreviated version** ('313 Patent, Claims 1 and 9) | No Construction |
| **archiving the documents and indicators in consistent format for selective retrieval** ('427 Patent, Claims 1 and 8) | No Construction |
| **controlling operating system** ('427 Patent, Claims 8 and 16) | an operating system that utilizes subsystems from another operating system |
| **chronological indicator** ('227 Patent, Claim 13; '427 Patent, Claim 25) | a data structure containing at least a timestamp |
| **persistent streams** ('227 Patent, Claim 13) | streams that are dynamically updated |
| **document representation** ('427 Patent, Claims 1, 8, 16 and 25) | a graphical depiction of a document, or data unit |
| **operating system** ('313 Patent, Claims 1; '427 Patent, Claims 1, 8, 16, and 25) | the software that handles basic computer operations (e.g. managing input/output, memory, applications, etc.) and presents an interface to the user |
| **document** ('313 Patent, Claims 1 and 9; '427 Patent, Claims 1, 8, 16 and 25) | Except as set forth below, "a data unit"<br><br>In the '313 Patent, Claim 1 at col.15:25, 15:26, 15:31, and 15:33 (i.e. each appearance of "document" in the fifth and sixth paragraphs of the claim after the preamble) and Claim 9 at col. 16:28, 16:29, and 16:34 (i.e. each appearance of "document" in the final two paragraphs of the claim, except the word "documents" in line 16:36), "a document representation" |
| **selected indicators** ('427 Patent, Claims 1, 8, and 16) | data structures that contain information relating to respective documents |
| **interrupt** ('427 Patent, Claims 1, 8, and 16) | an external signal to a program or process that may cause the program or process to take some action |
| **time-based indicators** ('313 Patent, Claims 1 and 9) | chronological indicators |
| **a substream that persists** ('313 Patent, Claim 3) | a substream that is dynamically updated |